**UNITED STATES v. 71.41 OUNCES GOLD FILLED SCRAP et al.**

**Claim of BARABAN et al.**

**No. 132.**

Circuit Court of Appeals, Second Circuit.

Jan. 10, 1938.

Lamar Hardy, U. S. Atty., of New York City, (William F. Young, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Benjamin P. DeWitt, of New York City (Benjamin P. DeWitt and Sidney Pepper, both of New York City, of counsel), for appellees.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

This libel was filed for the forfeiture of gold held in custody by the appellant after seizure by a secret service operative in conjunction with an investigator of the Director of the Mint's office. Gold Reserve Act, §§ 2(a), 3, 4, title 31 U.S.C.A.

§§ 441–443. The act provides that any gold withheld, acquired, transported, melted or treated, imported, exported or earmarked or held in custody in violation of the provisions of the act or regulations issued thereunder ·or license issued pursuant thereto, shall be forfeited to the United States.

By affidavits it was shown that on June 1, 1934, a license to deal in unmelted scrap gold to the extent of 200 Troy ounces was issued by the United States Assay Office to the Baraban Refining Company, Inc. and this was revoked September 24, 1934. On November 26, 1934, a license was granted to Minnie Sarch to acquire and hold, transport and import unmelted scrap gold not exceeding at any one time 25 Troy ounces. On April 1, 1935, a government employee, investigating transactions in gold, entered a store of the Baraban Refining Company, Inc., in the borough of Manhattan, New York City. The premises are on the ground floor and open to the public. Inside there are showcases, and a workshop is in the rear. While there the investigator witnessed a transaction in which a person agreed to pay $9 for an item of scrap gold. The purchaser was David Baraban, appellee, who admitted that he was dealing in gold without a license. Jacob Baraban was also present at the sale. Both were associated with the Baraban Refining Company, Inc. The investigator reported this occurrence to the Assay Office and an operative was assigned to the case. The operative and the investigator returned to the appellee's place of business and on entering saw in a showcase a quantity of scrap gold in a cigar box. Jacob Baraban was questioned but could not produce a gold dealer's license. Later he showed the cigar box of scrap gold, and admitted that he also had some gold-filled scrap jewelry. David Baraban entered and, when questioned, produced a license issued to Minnie Sarch, claiming, at first, that he was purchasing the gold on her license as agent. He later admitted that he had persuaded Miss Sarch to take out the license although she was not in the business and received no money from the transaction. Both the Barabans were then placed under arrest. A search of the workshop followed, and in this room, which was equipped with ladles, crucibles, blow torch, drilling machine, and cutting machine, there was found a pasteboard box containing United States and foreign gold coins. The gold was seized and taken to the United States Assay Office.

This libel was later filed against all the gold seized on the ground that it had been acquired, held, transported, and treated contrary to sections 3 and 4 of the Gold Reserve Act, 31 U.S.C.A. §§ 442, 443, and the regulations issued thereunder. Thereupon claims to the gold were filed by David Baraban and the Baraban Refining Company, Inc. On April 16, 1935, an order was issued to show cause why the gold should not be returned to the appellees and all evidence suppressed on the ground that the search and seizure was unlawful. The court below found the search and seizure was not an incident to an arrest; that the Gold Reserve Act did not make violations thereof a crime; and that the issuance of a warrant was necessary to authorize the search and seizure under the Customs Law.

■ The Fourth Amendment prohibits unlawful search and seizure. Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746. But the rule is clear that, as an incident to a lawful arrest, a search may be made and articles connected with the commission of the crime, stolen property, or property forfeited to the government by law, may be seized. Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231; Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409.

■ When the investigator and the operative of the government found that the Barabans were dealing in scrap gold without a license, and when David Baraban produced a nontransferable license issued to Minnie Sarch, who was not in the gold business, there was probable cause to arrest David and Jacob Baraban for the commission of a crime in their presence.

The Banking Emergency Act, March 9, 1933, § 2, 48 Stat. 1, title 12 U.S.C.A. § 95a, amending the Act of October 6, 1917, § 5(b), 40 Stat. 415, gave the President power to regulate traffic in gold coin, bullion, and currency, and provided a penalty of imprisonment for a violation thereof. Executive Order 6260, 12 U.S.C.A. § 95 note, was issued, providing for the filing of returns, prohibiting the acquisition and holding of any gold coins, bullion, or certificates, and providing for the issuance of licenses on certain conditions by the Secretary of the Treasury and a penalty for vio-

lation of the terms of such licenses. The Secretary of the Treasury made regulations for the issuance of licenses under the executive order. Licenses were frequently issued which authorized applicants to acquire and hold in stock unmelted scrap gold to a certain amount. These actions were all approved by section 13 of the Gold Reserve Act, 12 U.S.C.A. § 213, 31 U.S.C.A. § 824, and were in force at the time of this search and seizure.

Before the arrest and search, Jacob Baraban admitted that he was purchasing scrap gold. More gold was voluntarily shown to the operative.

When arrested, the Barabans were committing the crime of conspiracy to defraud the United States. Title 18 U.S.C.A. § 88. The license under which they had dealt in gold was revoked, but they purported to be buying and selling gold under the license of Minnie Sarch. David Baraban admitted that he had induced her to take out a license so that he could continue in business after the Baraban license had been revoked. Although Minnie Sarch was not in the gold business and never intended to be, she applied to the United States Assay Office for a license, swearing that she was in the gold business and knowing that her license was to be used for illegal dealings by the Barabans. Miss Sarch does not lay claim to the gold seized; the Barabans do. All of this was sufficient to warrant the claim of probable cause in making the arrest of the Barabans for a conspiracy to defraud the United States. They were conspiring to defeat the lawful functions of a department of the government and the administration of its policy. Hammerschmidt v. United States, 265 U.S. 182, 44 S.Ct. 511, 68 L. Ed. 968; United States v. Plyler, 222 U.S. 15, 32 S.Ct. 6, 56 L.Ed. 70; Haas v. Henkel, 216 U.S. 462, 30 S.Ct. 249, 54 L.Ed. 569, 17 Ann.Cas. 1112; Hamburg-American Packet Co. v. U. S., 2 Cir., 250 F. 747.

They were engaged in this offense in the presence of the officers of the United States and a search and seizure could be made. Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231. It was error, therefore, to restore to them the forfeited property which came into the possession of the appellant.

The order is reversed and the appellees directed to answer.

Order reversed.