## UNITED STATES v. COFFMAN (two cases).
### Nos. 6707, 6765.

District Court, S. D. California, S. D.

July 6, 1943.

Charles H. Carr, U. S. Atty., by Maurice Norcop, Asst. U. S. Atty., both of Los Angeles, Cal., for plaintiff.

David H. Cannon, of Los Angeles, Cal., for defendant.

YANKWICH, District Judge.

On May 13, 1943, Adrian L. Wilbur, and three other Special Agents of the Federal Bureau of Investigation of the Department of Justice, arrested the defendant, Roscoe Alexander Coffman, under an indictment returned by the Grand Jury of this District, on May 12, 1943, which charged, in four counts, that the defendant "knowingly, wilfully and unlawfully counseled, aided and abetted" two persons, registrants under the Selective Training and Service Act of 1940, "to evade service in the land and naval forces of the United States." 50 U.S.C.A.Appendix, § 311. The arrest was made with a bench warrant properly issued on May 12, 1943, at a ranch owned and occupied by the defendant near Fallbrook, San Diego County, California. The officers appeared at the ranch at eleven o'clock in the morning. They found the defendant in the field, about a quarter of a mile from the dwelling house on the premises, which he and his family occupied. They took him into custody *on the spot,* then proceeded, over his protest, to the dwelling house, *brought him into it,* handcuffed him and, still over his protest, and without a search warrant, searched the premises for over three hours, seizing the material and papers described in a stipulated list. Some of the seized documents were copies of letters written to the Selective Service Board and of telegrams sent to Lloyd Coffman, his nephew, one of the registrants whom he charged with aiding to evade service. The major portion of the material seized, consisted, however, of purely private letters, some relating to the ranch and to the cost of its operation, others written by the defendant to various persons, some of them men in American public life, including Senators of the United States, and a great variety of pamphlets, circulars and dodgers of various groups such as the Ku Klux Klan, The America First Committee, and various Pelley and Coughlin groups, which, before America's entry into war, were noted for, and outspoken in, their agitation against our participation in the war, against the present administration, and their opposition to and denunciation of certain racial and religious groups in our country.

The defendant has moved to suppress this evidence upon the ground that it was seized illegally, in violation of his constitutional rights.

On June 23, 1943, the Grand Jury of this District returned a new indictment against the defendant, charging substantially the same offense in four counts. The defendant has repeated his motion to suppress the evidence in this second prosecution. It has been stipulated that on this second motion, I could consider the facts relating to the arrest testified to on the hearing of the motion to suppress on the first indictment, and that I could also take into account the endorsement of the service of the warrant upon the defendant under the first indictment. The ruling here made will, therefore, apply to both cases.

█ The right of officers to search the premises of an accused incidental *to* his lawful arrest cannot be questioned. See: 4. Am.Jur. Arrest, Pars. 68, 69; United States v. 71.41 Ounces Gold Filled Scrap, 2 Cir., 1934, 94 F.2d 17; United States v. Feldman, 3 Cir., 1939, 104 F.2d 255, 256; and see my opinion in United States

v. Bell, D.C.Cal.1943, 48 F.Supp. 496. It is also given recognition by the Congress in the proviso to Section 53a of Title 18 U.S.C.A., which excepts searches by officers serving a warrant of arrest from the penalties of searches without a search warrant. But the right is not unrestrained. See: United States v. Lefkowitz, 1932, 285 U.S. 452, 463–466, 52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775; United States v. Thompson, 7 Cir., 1940, 113 F.2d 643, 129 A.L.R. 1291. It is limited to the time and place of the arrest. In other words, the search must be contemporaneous with the arrest and be made at the place where the arrest occurs. See: Vachina v. United States, 9 Cir., 1922, 283 F. 35; Kathriner v. United States, 9 Cir., 1921, 276 F. 808; Sayers v. United States, 9 Cir., 1924, 2 F.2d 146; Wida v. United States, 8 Cir., 1931, 52 F.2d 424; Vecchio v. United States, 8 Cir., 1931, 53 F.2d 628; Kelley v. United States, 8 Cir., 1932, 61 F. 2d 843.

■ A search at a location distant from the place of arrest, after the arrest *has been completed,* and where the entry of the place is not made prior to, or at the time of the arrest, *but after,* is illegal. The Supreme Court has spoken very clearly on the subject in Agnello v. United States, 1925, 269 U.S. 20, 30, 46 S.Ct. 4, 5, 70 L. Ed. 145, 51 A.L.R. 409, where Mr. Justice Butler said: "The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody is not to be doubted. See Carroll v. United States, 267 U.S. 132, 158, 45 S.Ct. 280, 69 L.Ed. 543 [39 A.L.R. 790]; Weeks v. United States, 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A.1915B, 834, Ann. Cas.1915C, 1177. The legality of the arrests or of the searches and seizures made at the home of Alba is not questioned. Such searches and seizures naturally and usually appertain to and attend such arrests. But the right does not extend to other places. Frank Agnello's house was several blocks distant from Alba's house, where the arrest was made. When it was entered and searched, the conspiracy was ended and the defendants were under arrest and in custody elsewhere. That search

cannot be sustained as an incident of the arrests." And see: Marron v. United States, 1927, 275 U.S. 192, 199, 48 S.Ct. 74, 72 L.Ed. 231.

Our own Ninth Circuit Court of Appeals has sustained these limitations in Papani v. United States, 1936, 84 F.2d 160, 163. We quote from the opinion:

"The second element which must exist in order to bring a case within the exception to the general rule is that in addition to a lawful arrest, *the search must be incident to the arrest. The search must be made at the place of the arrest,* otherwise it is not incident to the arrest. Agnello v. United States, supra. In this latter case, 269 U.S. 20, at page 30, 46 S.Ct. 4, 70 L. Ed. 145, 51 A.L.R. 409, and in Marron v. United States, supra, 275 U.S. 192, 198, 48 S.Ct. 74, 72 L.Ed. 231 and in United States v. Lefkowitz, supra, 285 U.S. 452, 464, 52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775, it is said that officers have a right to make a search contemporaneously with the arrest. And if the purpose of the officers in making their entry *is not to make an arrest,* but to make a search to obtain evidence for some future arrest, then the search is not incidental to the arrest. Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520; Go-Bart [Importing] Co. v. United States, supra, 282 U.S. 344, 358, 51 S.Ct. 153, 75 L.Ed. 374; United States v. Lefkowitz, supra, 285 U.S. 452, 467, 52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775; Taylor v. United States, 286 U.S. 1, 6, 52 S.Ct. 466, 76 L.Ed. 951.

"Summarizing the above rules, it would seem that a search is not incidental to the arrest, unless the search is made at the place of arrest, contemporaneously with the arrest." (Italics added.)

And see, Bell v. United States, 9 Cir., 1925, 9 F.2d 820; Walker v. United States, 5 Cir., 1942, 125 F.2d 395.

■ In language of unmistakable clarity, the Courts have thus spoken to federal law enforcement officers and admonished them that searches of one's premises, without a warrant, after an arrest is completed, are violative of the right guaranteed by the Fourth Amendment to the Constitution of the United States. The facts here, which are beyond dispute, show a direct violation of this right. The purpose of the entry of the house, over the objection of the defendant, could not have been "to make an arrest", for the arrest had already

been made and the defendant was in the custody of the officers, a quarter of a mile from the dwelling house. The search was purely exploratory—of the type which courts have condemned repeatedly. See: Taylor v. United States, 1932, 286 U.S. 1, 6, 52 S.Ct. 466, 76 L.Ed. 951; United States v. Lefkowitz, 1932, 285 U.S. 452, 462, 52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775. The named arresting officer, at the hearing before me, in answer to a question as to the nature of the articles seized, after referring to the ranch records and the letters to the Selective Service Board, and telegrams to the nephew, stated, as if to exculpate himself and his fellow officers: "And we took some books, pamphlets and other material *which possibly we thought might have some bearing on his state of mind*". It is quite evident that most of the objects seized could not be used as evidence in the case. For certain it is that letters and documents showing participation by the defendant in anti-war, anti-administration, anti-Jewish, and anti-Catholic agitation or membership in the Ku Klux Klan or in Coughlin's Anti-Jewish Social Justice Movement—even if brought down to the date of the indictment—do not relate to the offenses with which he is charged. They do not have any bearing whatsoever upon, what the arresting officer called, the defendant's "state of mind". The wilfullness required of one who counsels, aids and abets another to evade service in the land and naval forces of the United States is not a general ideological opposition to war, which many men in and out of the Congress maintained up to America's entry into the war, but the evil design to do the particular act denounced by Section 311, Title 50 U.S.C.A. Appendix. See: United States v. Murdock, 1933, 290 U.S. 389, 394, 395, 54 S. Ct. 223, 78 L.Ed. 381; Spies v. United States, 1943, 317 U.S. 492, 495–499, 63 S. Ct. 364, 87 L.Ed. ——. But even if the objects seized were instrumentalities of the crime, their seizure *after the arrest* was illegal. The protection of a person against unlawful searches and seizures has not been suspended by the war. It extends to persons accused of war-time crimes as well as to others. The rules of fair play in criminal detection and prosecution should be observed with greater strictness "at a time when passion and prejudice are heightened by emotions stirred by our participation in a great war." Viereck v.

United States, 1943, 318 U.S. 236, 248, 63 S.Ct. 561, 566, 87 L.Ed. ——. In United States v. Bell, supra, I expressed the view that, *as a matter of policy,* no search should ever be made by a federal enforcement officer without a warrant. "Indeed, the informed and deliberate determinations of magistrates empowered to issue warrants as to what searches and seizures are permissible under the Constitution are to be preferred over the hurried action of officers and others who may happen to make arrests. Security against unlawful searches is more likely to be attained by resort to search warrants than by reliance upon the caution and sagacity of petty officers while acting under the excitement that attends the capture of persons accused of crime." United States v. Lefkowitz, supra, 285 U.S. at page 464, 52 S.Ct. at page 423, 76 L.Ed. 877, 82 A.L.R. 775. And whatever practical advantage may ensue from a contrary policy is more than offset by the harm which results to the whole legal establishment through lawless methods of enforcement.

Law enforcement officers should ever bear in mind the warning of Mr. Justice Sutherland in Byars v. United States, 1927, 273 U.S. 28, 33, 47 S.Ct. 248, 250, 71 L. Ed. 520: "The Fourth Amendment was adopted in view of long misuse of power in the matter of searches and seizures both in England and the colonies; and the assurance against any revival of it, so carefully embodied in the fundamental law, is not to be impaired by judicial sanction of equivocal methods, which, regarded superficially, may seem to escape the challenge of illegality but which, in reality, strike at the substance of the constitutional right." And see: Sgro v. United States, 1932, 287 U.S. 206, 210, 53 S.Ct. 138, 77 L.Ed. 260, 85 A.L.R. 108; Lowrey v. United States, 8 Cir., 1942, 128 F.2d 477, 480; Jones v. United States, 10 Cir., 1942, 131 F.2d 539, 540.

In a case of this character, involving a defendant who, as it appears, owns property of value in the community, who found no difficulty in making rather large bail—$25,000—who is not likely to escape without leaving traceable tracks, the benefit of surprise through a search without a warrant is absent. As the indictment was secret and the offense a simple one, any documents or papers relating to the offense could have been described in an affidavit

for a search warrant and identified readily with the certainty required by law. And, to use the words of the Court in Taylor v. United States, supra, 286 U.S. at page 6, 52 S.Ct. at page 467, 76 L.Ed. 951, "there was no probability of material change in the situation during the time necessary to secure such warrant". Consequently, aside from the purely legal question, considerations of forthright policy should have commanded a different course than the illegal one which was followed.

The motion to suppress is granted in both cases, and the Government is ordered to return to the defendant forthwith the seized property, as described in the stipulation on file.