336

**Application of ROSENBERG.**

**Misc. No. 1457.**

United States District Court
E. D. New York.
Dec. 6, 1950.

Henry G. Singer, Brooklyn, N. Y., and M. Jay Fein, New York City, for petitioner (Henry G. Singer, Brooklyn, N. Y., of counsel).

Frank J. Parker, U. S. Atty., Brooklyn, N. Y., for the United States (George W. Percy, Jr., Asst. U. S. Atty. Chief, Criminal Division, Brooklyn, of counsel).

BYERS, District Judge.

This is a motion by the above-named Rosenberg to suppress all evidence obtained by Agents of the United States Customs Service on September 24, 1950, at the residence of the petitioner, or by any other government official, as the result of an alleged illegal search and seizure.

David Rosenberg is a citizen of Israel, engaged in the diamond business, who says that he arrived in the United States on May 7, 1950, under a passport, but his purpose in being here is not disclosed. On the day of the search, he says he occupied a furnished apartment at 232 Hewes Street, Brooklyn.

On September 23, 1950, two Customs Agents, Duncan and Turner, intercepted the departure for Brazil by airplane of one Louis Feirst whose luggage (three pieces) was found to contain, secreted under the lining, gold bullion in sheet form aggregating not less than 34½ pounds of gold. Feirst told the Agents that he had been hired by Rosenberg to transport and deliver the gold; it also was stated that his companion, Kahan, had accompanied Rosenberg in removing these three bags from Rosenberg's said apartment to the residence of Feirst. These happenings took place between about 11:30 P.M. on September 23d and 1:45 A.M. September 24th, when the Agents and Feirst and Kahan arrived at the Appraiser's Stores, 201 Varick Street, Manhattan.

Then Customs Agents Eisenberg and Turner were ordered to visit Rosenberg's residence, and they arrived there at approximately 3:30 A.M. The immediately subsequent happenings are material to this motion.

Rosenberg's petition alleges that he does not speak, and cannot understand, the English language, but his signatures to the petition and the attached verification are in well formed English letters, compatible with his calling as a dealer in diamonds for fifteen years. However, the Agent Eisenberg deposes that he speaks and understands Yiddish fluently and that he conducted in that medium the conversations with Rosenberg which the Government asserts, and

Rosenberg denies, constituted an invitation to enter the apartment and a consent to the search which brought to light the papers and documents, etc., to which this motion is directed.

Where the truth lies as to the extent to which Rosenberg in fact understood what was said to him, and knowingly agreed to the search, would be difficult enough to decide if the participants were to be examined in person before the Court, in the light of cross-examination and the help of a competent interpreter; to reach a satisfactory conclusion on the subject merely in reliance upon what the affidavits say, pro and con, is impossible.

It is not argued that a valid consent could not have been given under any circumstances whatever, and of course there are no decisions cited to sustain so extreme a contention.

Eisenberg swears that he told Rosenberg that it was desired to speak to him about the three bags which Feirst had in his possession, and that Rosenberg at once asked: "Did he (Feirst) say I gave him the bags?" to which Eisenberg replied: "I want to let you know that last night Louis Feirst was arrested at La Guardia Airport after three bags which he had were found to contain gold, and he said you gave him the bags. We will talk about that a little later."

If the foregoing dialogue did in fact occur, it might well have created in Rosenberg's mind an awareness that his alleged complicity in the exportation of the gold was known to the authorities, and that discretion would dictate cooperation with them rather than the reverse. That alleged incident would require demonstration by convincing evidence, if any understanding of what took place is to be arrived at.

The petitioner's argument seeks to preserve his negative version of the episode, but to rely more upon several legal propositions based upon decisions in other cases, than upon his ability to demonstrate that the Agents have been untruthful in their sworn narratives.

It is urged that, since there was no arrest, the search and seizure could not have been incidental to an arrest, and the question of probable cause to believe that a crime had been or was being committed did not arise.

The first branch of this objection (arrest) presents a barrier to present understanding since the position of both parties on this subject is equivocal:

The petition recites that Rosenberg's arrest was illegal, and since the only reference therein is to the events of September 24, 1950, he perhaps has in mind his accompanying the Agents to 201 Varick Street, which the Agents say they "desired" him to do, and that he did. However, his brief asserts that there was no arrest. There is no clear statement, in the papers as a whole, of when Rosenberg was apprehended or taken into custody, or his present status as a litigant, civil or criminal. In view of this nebulous state of the record, the Court cannot characterize his legal position as at the filing of this motion.

There is attached to the Government's brief what is called a copy of a complaint captioned in this Court, "filed herein * * September 25, 1950", entitled "United States of America, Plaintiff, against David Rosenberg, Louis Feirst, and Samuel Kahan, Defendants", in which Agent Duncan swears that the defendants between September 1 and 25, 1950, did "confederate, agree and conspire to violate the Gold Reserve Act of 1934 as amended" in that they conspired to acquire, transport and export gold bullion without a Treasury license, in violation of Title 18 U.S.C.A. § 371, wherefore, it is prayed that they "be dealt with according to law".

Since this "complaint" seems to be entitled as though in a civil suit, and no order of arrest in connection therewith is sought or said to have been issued, the entire subject of what Rosenberg calls his arrest is not made even reasonably clear in the record as now constituted. If Rosenberg is merely a potential defendant in a civil cause, it is impossible to understand why he is not entitled to the prompt return to him of his papers, documents, etc., being the items specified in paragraph 9(b.–h., inclusive) of the petition.

338

The Government's brief argues that Rosenberg and his accomplices conspired to violate the Gold Reserve Act 31 U.S.C.A. §§ 440–445, and hence are guilty of conspiracy, Title 18 U.S.C.A. § 371. So much can be conceded for argument, even though the former statute contains no criminal sanctions but does provide for forfeiture, § 443, of the subject-matter of the unlawful traffic, and a penalty.

The Gold Reserve Act was before the Court in a forfeiture proceeding in United States v. 71.41 Ounces Gold Filled Scrap, 2 Cir., 94 F.2d 17, and in the course of reversing a decree for claimants, the Court observed, 94 F.2d at page 19, that the defendants were arrested and were committing the crime of conspiracy to defraud the United States, and under the facts presented, the search and seizure were proper and the forfeited property (the gold) could not be restored. It does not appear whether there was a prosecution for the conspiracy.

A criminal proceeding involving gold was before the Court in United States v. Levy, 2 Cir., 137 F.2d 778, and the bearing of the Trading with the Enemy Act, 50 U. S.C.A.Appendix, § 1 et seq., is discussed in such a case.

Search and seizure as incident to a lawful arrest have been constantly considered by the Supreme Court, and as recently as Harris v. United States, 331 U.S. 145, at page 150, 67 S.Ct. 1098, at page 1101, 91 L. Ed. 1399. Also the distinction between public and private papers, Davis v. United States, 328 U.S. 582, at pages 589 and 611, 66 S.Ct. 1256, at pages 1259, and 1270, 90 L.Ed. 1453. Whether some of Rosenberg's papers could be thought of as public, in view of the Gold Regulations, naturally does not appear at the present juncture.

It seems too clear for discussion that Rosenberg, Feirst and Kahan could have been engaged in a conspiracy within Title 18 U.S.C.A. § 371 to defraud the United States, but whether they were or not would depend upon the proof to be adduced if they should be brought to trial.

Enough has been stated to explain why the Court cannot dispose of this motion in any definitive sense. If there is to be a trial either of a civil forfeiture or criminal conspiracy, Rosenberg's right to assert that the search and seizure were illegal should be preserved. If no such litigation is promptly instituted, the right should be reserved to him to renew this motion upon notice, for reasons above stated.

As at present advised, the Court is constrained to deny the motion, the order to contain appropriate reservations as indicated.

Settle order.