### TAYLOR v. FINE et al.
### No. 15437.

United States District Court,
S. D. California, Central Division.
July 21, 1953.

William M. Taylor, in pro. per.

Walter S. Binns, U. S. Atty., Clyde C. Downing and Robert K. Grean, Asst. U. S. Attys., Los Angeles, Cal., for defendants.

YANKWICH, Chief Judge.

Defendants are agents of the Immigration Service of the United States. In the course of their duties, on March 19th, March 28th, and April 7th, 1953, they approached the plaintiff's ranch in Riverside County, California, called to some Mexican laborers who were working there and asked them if they were legally in the United States. When they admitted that they were not, the officers took them into custody.

The plaintiff brought an action in a lower State court seeking damages in the sum of $200 for alleged trespass. On the application of the Government, the cause was removed to this court.

The Complaint alleged various acts of violence against the plaintiff, damage to

his growing crops and even "kidnapping" of an employee.

■ After hearing the evidence, I am satisfied that no trespass was committed, no force was used, no damage inflicted on person or property, and that there was not even a "theoretical" trespass on any of the three occasions mentioned in the Complaint. See, Bell v. Hood, 1946, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939.

■ An immigration officer of the United States has the right to arrest a person without a warrant if he has reasonable grounds to believe that a felony has been committed, 18 U.S.C.A. §§ 3052–3053; 8 U.S.C.A. § 1357(a) (2).[1] Even in the absence of a special grant of such right, officers of the United States have the same rights as police officers of the State in which they are located. United States v. Di Re, 1947, 332 U.S. 581, 66 S.Ct. 222, 92 L.Ed. 210.

■■ Under the law of California, a police officer has the right to make an arrest without a warrant, if he has reasonable ground to believe that a felony has been committed. California Penal Code, Sec. 836, subd. 3.[2] The regulations of the Department of Immigration interpret the right of immigration officers in like manner and specifically provide:

"III (2) Arrest without warrant.

"Arrest without warrant of an alien who (1) is in the United States in violation of the immigration laws and (2) is likely to escape before a warrant for his arrest can be obtained is authorized by statute." (See Bulletin entitled, "Authority of Officers of the Immigration and Naturalization Service to Make Arrests," issued November 15, 1951).

The determination of the officer that the person is likely to escape will be sustained if there is a reasonable ground for it.[3]

An immigration officer has the right to inquire into the privilege of an alien or a person believed or suspected to be one, to enter, reenter, pass through or reside in the United States. 8 U.S.C.A. § 1225(a). He may also interrogate him. 8 U.S.C.A. § 1357(a) (1). An alien illegally in the United States may be guilty of a felony. 8 U.S.C.A. §§ 1325–1326.

■ The evidence satisfies me that the area in which the arrests were made is one in which many Mexican Nationals who are illegally in this country ("wet-backs" as they are called) are employed. Indeed, the testimony in the record shows that over a period of six months preceding the particular arrests, hundreds of illegal entrants were apprehended on the ranches in the vicinity of the Coachella district. Such condition denotes persistent law violations which constitute probable cause for action. Certainly, with this situation confronting them, it would be unreasonable to require immigration officers, under penalty of civil damages, to arm themselves with a warrant of arrest each

1. Incidental to a legal arrest whether with or without a warrant, the officers may conduct a reasonable incidental search: United States v. Bell, D.C.Cal.1943, 48 F.Supp. 986; United States v. Coffman, D.C.Cal.1943, 50 F.Supp. 823; Harris v. United States, 1946, 331 U.S. 145, 67 S. Ct. 1098, 91 L.Ed. 1399; United States v. Rabinowitz, 1950, 339 U.S. 56, 70 S. Ct. 430, 94 L.Ed. 653.

2. California courts are very liberal in assaying the acts which constitute probable cause. Generally, the reasonable ground or suspicion which justifies an arrest without a warrant has been declared to be a state of facts which would lead a man of ordinary care and prudence to believe or entertain an honest and strong suspicion that the person is guilty of an offense. See, People v. Kilvington, 1894, 104 Cal. 86, 92, 37 P. 799, 801; Michel v. Smith, 1922, 188 Cal. 199, 206, 205 P. 113, 116; Bate v. Jolin, 1929, 206 Cal. 504, 508, 274 P. 971, 973; Stowell v. Evans, 1931, 211 Cal. 565, 296 P. 278; Murphy v. Murray, 1925, 74 Cal.App. 726, 731, 241 P. 938, 940; People v. Brite, 1937, 9 Cal.2d 666, 687, 72 P.2d 122; Coverstone v. Davies, 1952, 38 Cal.2d 315, 320–326, 239 P.2d 876.

3. See cases cited under Note 2. Cf. United States v. Coplon, 2 Cir., 1950, 185 F.2d 629.

time they look for illegal entrants in an area noted for their presence. Such requirement would play into the hands of those who, like the plaintiff, employ illegal entrants, safe in the knowledge that *the law does not punish them,* but only the illegal entrants.[4]

■■ There is no evidence that anybody was molested or that "any hand was put upon any person". On every one of the three occasions, the evidence shows the presence on plaintiff's land of aliens illegally in the country. If it were possible to submit officers of the United States Immigration Service to harassment every time they search for illegal entrants, if they could be subjected to suits even for nominal damages,[5] the landowners of the Coachella district would be erecting barriers against the United States Government, and, in effect, telling the officers of the Government, "Do not enter, no matter what federal laws are violated." Under the protection of barbed-wire fences, they could thus employ aliens illegally in the country and aid law violations. I am quite certain that if a warrant of arrest had been secured, the plaintiff, who is a lawyer, would have found other grounds for objecting to the acts of the officers, and interfering with their attempt to enforce the law, as he had done in the past.

4. The provision against harboring of aliens, 8 U.S.C.A. § 1324, is no deterrent. Because of its requirements as to knowledge, it is difficult to enforce, as all those who have had occasion to institute prosecutions under it, have found out.

5. See, Gregoire v. Biddle, 2 Cir., 1949, 177 F.2d 579.

Open fields are not within the protection against unreasonable searches and seizures.

"The Fourth Amendment secured the people against not all, but only unreasonable searches and seizures of their persons, houses, papers and effects. *Enclosed or unenclosed grounds or open fields around their houses are not included in the prohibition.*" Martin v. United States, 5 Cir., 1946, 155 F.2d 503, 505. (Emphasis added.)

Decisions antedating the one just referred to sustain this view.

" * * * the special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers and effects,' *is not extended to the open fields. The distinction between the latter and the house is as old as the common law.* 4 Bl.Comm. 223, 225, 226." (Hester v. United States, 1924, 265 U. S. 57, 59, 44 S.Ct. 445, 446, 68 L.Ed. 898.) (Emphasis added.)

"Nor does the special protection accorded by the Fourth Amendment extend to the open driveways on each side of the building, or the open space in the rear of the building." United States v. Rogato, D.C.Pa., 1930, 39 F.2d 171, 175.

"*The search was not unreasonable. It was upon open premises.*" Koth v. United States, 9 Cir., 1926, 16 F.2d 59, 61. (Emphasis added.)

See, United States v. Feldman, 3 Cir., 1939, 104 F.2d 255, 256. These declarations are of special significance. For even if we assume, as testified to by the plaintiff, that the defendants actually entered upon the driveway in order to arrest the aliens, there was no violation of law on the part of the officers.

As it is, some of the aliens, who were witnesses in the case, contradicted the plaintiff and corroborated the officers that they were outside the plaintiff's land and near the fence when they addressed them.

They also testified that they voluntarily neared the officers and submitted to arrest, as the defendant urged them to walk away from the officers onto the field.

The warning of the Court of Appeals for the Second Circuit is very appropriate.

"The mass of seemingly conflicting decisions on the point, which can serve only as a general guide, since each case must be decided on its own facts, Go-Bart Importing Co. v. United States, supra, 282 U.S. [344] at page 357, 51 S.Ct. [153] at page 158, 75 L.Ed. 374, and through which, as we said in Matthews v. Correa, 2 Cir., 135 F.2d 534, 536, we must proceed 'gingerly' and 'with due circumspection, so far as lies in our power, for the constitutional rights of the petitioner and the need that government officials be not unduly hampered in tracking down crime,' have evolved certain general principles." United States v. Lindenfeld, 2 Cir., 1944, 142 F.2d 829, 832.

72

The plaintiff has not proved any grounds for recovery under any of the causes of action stated in the Complaint.

Judgment will, therefore, be for the defendants. Formal Findings and Judgment to follow under Local Rule 7.