## UNITED STATES v. TRUPIANO et al.

### No. 4308c.

District Court, D. New Jersey.
March 4, 1947.

Edgar H. Rossbach, U. S. Atty., of Newark, N. J., by John A. Waldron, Asst. U. S. Atty., of Trenton, N. J. (Samuel Cohen, of counsel), of Newark, N. J., for the United States.

Anthony A. Calandra, of Newark, N. J., for petitioners.

FORMAN, District Judge.

The government filed a complaint against the defendants, petitioners herein, charging violation of the Internal Revenue Laws. The petitioners moved to suppress certain evidence held by the government against them, claiming that since it was obtained without a search warrant their constitutional rights were invaded. For the purpose of the motion, affidavits were submitted by the government, and the petitioners offered the record of the preliminary examination before the United States Commissioner.

In January 1946 the petitioners leased part of the Copeland Kell Farm, located in Allenwood Township, New Jersey, and they agreed to construct a roadway, a barn, dig a well, and pay a monthly rental.

The lessor, Kell, was suspicious and reported these facts to the government. Kell permitted the defendants to proceed with their plans, and, in fact, the government planted an agent on the premises. A still was constructed which began to operate about three weeks prior to the night of a raid by government agents on June 3, 1946. Production was at the rate of 400 to 500 gallons a day. As a result of information produced by the government's secret agent, a truck containing 91 five gallon cans of alcohol was seized May 31, 1946. On information from the same source that the principals were present at the still, the government made a raid upon the premises on the night of June 3, 1946.

On approaching the farm the government agents detected a very strong odor of fermenting mash, heard a motor running, and saw a still through the unclosed barn door. Fire in the boiler was banked, and the still was not in operation at the time. Government agents arrested petitioners on the premises and found several hundred cans of alcohol. The petitioners alleged that the still, alcohol, mash and other equipment were unlawfully seized without a search warrant. The barn was about 200 yards from the house in which Kell lived.

Petitioners argue that the conduct on the part of the government not only amounts to entrapment which is not complained of on their motion, but that the same facts show that the government had information at hand sufficiently early for it to have procured a search warrant. The rule relied upon by petitioners was set forth in the case of Taylor v. United States, 1932, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951. In that case Taylor was charged with unlawful possession of whiskey. A motion to suppress was made on the ground that evidence was seized from the garage adjacent to petitioners residence without a warrant. There was an odor emanating from the garage, but no one was within the place. While the search progressed Taylor came from his house and was put under arrest. The court stated:

"Although over a considerable period numerous complaints concerning the use

of these premises had been received, the agents had made no effort to obtain a warrant for making a search. They had abundant opportunity so to do and to proceed in an orderly way even after the odor had emphasized their suspicions; there was no probability of material change in the situation during the time necessary to secure such warrant. Moreover, a short period of watching would have prevented any such possibility.

\*   \*   \*   \*   \*   \*

"Prohibition officers may rely on a distinctive odor as a physical fact indicative of possible crime; but its presence alone does not strip the owner of a building of constitutional guaranties \* \* \* against unreasonable search. This record does not make it necessary for us to discuss the rule in respect of searches in connection with an arrest. *No offender was in the garage; the action of the agents had no immediate connection with an arrest. The purpose was to secure evidence to support some future arrest."* (Italics supplied.) 286 U.S. 1, 6, 52 S.Ct. 466, 467, 76 L.Ed. 951.

To the above authority petitioners have added In re Milburne, 2 Cir., 1935, 77 F.2d 310, and United States v. Edelson, 2 Cir., 1936, 83 F.2d 404, for the proposition that where the government agents have ample opportunity to procure a search warrant they must do so. These cases relied upon the Taylor case, supra.

In this Circuit in the case of Pong Ying v. United States, 3 Cir., 66 F.2d 67, the court stated that the Supreme Court has not varied the law of the right to search without a warrant when a crime is being committed in the presence of government officers. Therein, the government had information that opium was being smoked at the premises in question, and narcotic agents proceeded to the place where they smelled fumes from burning opium, heard voices inside, and gained admission by breaking the door. They searched the premises without a warrant, and obtained evidence against the defendant. On motion to suppress the evidence, the court observed that there was no constitutional privilege, and that the narcotic officers would have been derelict in their duty had they not acted promptly and effectively to enter and search the apartment. In Strauss v. United States, 3 Cir., 1933, 66 F.2d 786, the court stated that the officers had reasonable grounds for believing the distillery was then being operated, and it was their duty to enter, and that the lower court was right in refusing to suppress the proofs of lawbreaking found therein.

In the case of United States v. Feldman, 3 Cir., 1939, 104 F.2d 255, the court quoted with approval the syllabus in Rocchia v. United States, 9 Cir., 78 F.2d 966, as follows:

"Officers who detected strong odor of fermenting mash and distillation, and who heard still in operation before entering building, had reasonable cause for believing that crime was being committed in their presence and could enter building and arrest defendant without first obtaining warrant, and as incident thereto could search premises and seize property used in commission of crime." 104 F.2d 255, 257.

Cases in this Circuit bearing on this problem were reviewed in United States v. Esposito, D.C.E.D.Pa., 1942, 45 F.Supp. 39, wherein government agents who made the search and seizure complained of had had the garage under observation from July 30 to November 13, 1941, the date of the arrest. The court stated:

"If the facts observed by the government agents were such as to justify a reasonably prudent person in believing that the law had been or was being violated in the premises afterward searched, then there was probable cause for the search and seizure, and the petitions should be denied—and vice versa." 45 F.Supp. 39, 40.

The government agents herein were not pressed for time but we do not think that their failure to procure a search warrant during this period requires the suppression of the evidence they found. They were drawn to the scene of the alleged crime by one of their own number allegedly working with the suspects. This was good policemanship and efficient crime detection. They were obviously waiting for the proper moment to strike. Before their entry

they smelled the distinctive odors, saw the still, and heard a motor running. They apprehended the defendants involved and placed them under arrest. The test of reasonableness that must be applied in all such cases results in the disclosure of no fracture of the defendants' constitutional privileges and the motion to suppress will be denied.