## UNITED STATES v. ROETT.

### Nos. 9836, 9846.

United States Court of Appeals Third Circuit.

Argued Dec. 20, 1948.

Decided Jan. 26, 1949.

Writ of Certiorari Denied April 25, 1949.
See 69 S.Ct. 889.

Frederic M. P. Pearse, of Newark, N. J., for appellant.

Grover C. Richman, Jr., Asst. U. S. Atty., of Camden, N. J. (Alfred E. Modarelli, U. S. Atty., and Samuel Cohen, Atty. in Charge Alcohol Tax Division, both of Newark, N. J., on the brief), for appellee.

Before BIGGS, Chief Judge, and Mc-LAUGHLIN and KALODNER, Circuit Judges.

BIGGS, Chief Judge.

Only one point is presented by the instant appeals. The defendant, Roett, asserts that he was entrapped by federal officers into violations of laws of the United States.[1] We shall state only the facts necessary for a decision. Roett is a member of the bar of New Jersey. At some time in 1944 Roett, employing the name Johnson, had come to see Kell, a farmer, to ask him if he, Kell, would lease part of a farm, which Kell had just purchased at Allenwood, to him. Nothing came of this original meeting. About two years later, early in 1946, Roett again came to see Kell and again requested to rent a part of a farm. On this occasion Kell received the impression that Roett desired to lease part of a farm in order to operate a still. Kell refused the request on this occasion but Roett came to see him several times thereafter and urged Kell to rent to him part of the farm. Kell then got in touch with Casey, an investigator of the Federal Alcohol Tax Unit, and told Casey that he had been approached by a man with a suspicious proposition. Kell later talked to Gettel, the Investigator-in-Charge of the Alcohol Tax Unit at Newark, New Jersey. According to Kell's testimony Gettel stated to Kell that " * * * it would be perfectly all right for * * * [him] to let them start operations, to lease

---

[1] Vide the provisions of Sections 2833, 2810 and 3321 of Title 26, Internal Revenue Code, 26 U.S.C.A. §§ 2810, 2833, 3321, and Section 88 [now § 371] of former Title 18, United States Code Annotated.

part of the farm". About the middle of February, 1946 Casey brought an undercover agent of the Alcohol Tax Unit, Nilsen, to the farm. Nilsen was instructed to act as a "dumb" farm hand and to report his observations from time to time to the Alcohol Tax Unit.

About the first of March, 1946 Kell wrote a letter to Roett informing him that Kell would rent to him. While negotiations for a lease between Kell and Roett were under way, Roett, accompanied by several other persons, including Ricciardelli and Trupiano,[2] came to Kell's farm three or four times and were present while Roett arranged to pay Kell $300 a month as rent. Nilsen was present at these meetings but took no part in the conversations. Kell knew that Nilsen was employed by the Alcohol Tax Unit. Late in March or early in April 1946 Roett gave Kell $150 to buy a scoop to dig an excavation for a building on the farm. Nilsen and Kell did the excavating. Roett drove a truck to bring cinder blocks and building materials to the farm for the new building and helped to build the walls. A local firm, hired by Roett, dug a well. The building was completed about May 1 and a still and other equipment were installed.

Legg, Chief of Police of the Borough of Brielle, situated within a few miles of the Kell farm, had known Roett since 1941. Roett and Legg had had several conversations over a period of four years. Roett had brought "mobs" to Legg with the thought that they might operate in or near the Borough of Brielle, Roett desiring to obtain the "protection" of Legg as Chief of Police for contemplated operations. From January to March 31, 1946 Legg was attending the Federal Bureau of Investigation school for police chiefs in Washington. On January 28 he received a telephone call from Roett who informed him that " * * * everything was all set", meaning that distilling operations were about to commence on the Kell farm. Legg told Roett not to commence distilling until he returned to Brielle. He then informed Casey of his conversation with Roett. On

May 15 Legg received $50 protection money from Roett; on May 22 he received $75 and on June 1 another $50. When the still was raided this money was turned over by Legg to the Alcohol Tax Unit and was introduced in evidence at Roett's trial.

Gettel, according to his testimony, made it plain to Kell that Kell was not " * * * in any way, shape or form to entice * * * or encourage * * * [Roett and his associates] in setting up the distillery, that all of the original information and going forth of such a project should come from them." There is, however, some evidence that Kell participated to a limited degree in trying to find a well digger to dig a well to increase the water supply at the farm for the operation of the still. It is clear also that Nilsen took part in the actual operation of the still. But the record shows beyond any doubt that Roett was the "front" man for a well organized gang who were intent on proceeding with an illegal enterprise with skill and dispatch.

It is against the background of the foregoing facts that the defendant alleges that he was entrapped and that his motion for a directed judgment of acquittal should have been granted by the court below.

■ We cannot agree. Both the defendant and the United States rely upon Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, and we, too, are of the opinion that that authority presents a decisive analogy for the determination of the instant appeals. As stated by Mr. Chief Justice Hughes, Id., 287 U.S. at pages 441, 442, 53 S.Ct. at page 212, 77 L.Ed. 413: "It is well settled that the fact that officers or employees of the government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises. * * * The appropriate object of this permitted activity, frequently essential to the enforcement of the law, is to reveal the criminal design; to expose the illicit traffic, the prohibited publication, the fraudulent use of the mails, the illegal

---

[2] See United States v. Trupiano, 3 Cir., 163 F.2d 828 and Id., D.C., 70 F.Supp. 764. See the decision of the Supreme Court reversing both lower courts, 334 U.S. 699, 68 S.Ct. 1229.

conspiracy, or other offenses, and thus to disclose the would-be violators of the law. *A different question is presented when the criminal design originates with the officials of the Government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute."* [3]

■ The mere statement of this guiding principle of the Sorrells case is sufficient to demonstrate how far the instant facts lie from entrapment. There was no instigation on the part of the federal officers, Legg, or Kell which induced Roett to engage in the illegal acts for which he was indicted, nor was he pursuaded or enticed into a course of criminal conduct by their actions. Roett over a period of years persistently followed a criminal design which originated with him and his associates. While it is true that Kell and Nilsen were employed as decoys, nonetheless the employment of decoys by law enforcement officers finds full sanction in the authorities. See Newman v. United States, 4 Cir., 299 F. 128, 131, cited with approval by Mr. Chief Justice Hughes in the Sorrells opinion.

This court has had an opportunity at a recent date in United States v. Brandenburg, 3 Cir., 1947, 162 F.2d 980, 982, certiorari denied 332 U.S. 769, 68 S.Ct. 80, to consider and pass upon a situation analogous to that at bar. What we said in the cited case need not be repeated here nor need we rehearse the authorities set out therein. We decided in the Brandenburg case that the defense of entrapment afforded no bar to the introduction into evidence at Brandenburg's trial of prescriptions for morphine sulphate and drugs obtained thereby despite the fact that the prescriptions and drugs had been procured by a government informer, an addict who purchased the prescriptions from Brandenburg with funds supplied by government agents. The informer-addict was shown to be virtually in the employ of the government. But in any event it is clear that the trial court committed no error prejudicial to Roett in submitting the defense of entrap-

ment to the jury. See the Sorrells decision, 287 U.S. at page 452, 53 S.Ct. at page 219, 77 L.Ed. 413, and the Brandenburg decision as cited. The jury properly decided that issue against Roett.

■ This brings us to the second point raised by the defendant, namely that the court below erred in its charge to the jury in not stating adequately the attendant circumstances and the applicability of the defense of entrapment in the light thereof. Again we cannot agree. An examination of the charge of the court reveals that the defense of entrapment was fairly and adequately submitted to the jury.

Accordingly the judgments of conviction will be affirmed.