## UNITED STATES v. FELDMAN
### (two cases).
### Nos. 6883, 6884.

Circuit Court of Appeals, Third Circuit.

May 3, 1939.

Rehearing Denied June 15, 1939.

Warren H. VanKirk, of Pittsburgh, Pa., for appellants.

Charles F. Uhl, U. S. Atty., and Jay R. Spiegel, both of Pittsburgh, Pa., for the United States.

Before DAVIS, MARIS, and CLARK, Circuit Judges.

DAVIS, Circuit Judge.

These are appeals from judgments entered after trial upon verdicts of guilty. The indictment contained five counts charging the defendants with carrying on the business of distillers without having given bond as required by law; with making and distilling a certain quantity of distilled spirits with intent to defraud the United States of the tax on the spirits distilled by them; with making and fermenting a certain quantity of mash fit for the distillation of spirits and alcohol, in a building other than a distillery duly authorized according to law; with having in their possession a still and distilling apparatus without registering them with the Collector of Internal Revenue, according to law; and with depositing and concealing a certain quantity of distilled spirits with intent to defraud the United States of the tax imposed upon it by law.

The defendants were found guilty on all counts.

Speaking of the parties as they stood in the District Court, the defendants, Ralph Feldman and Jacob Feldman, lived in a double dwelling house at 114 Montville Street, Pittsburgh, Pennsylvania.

The land rises abruptly from the front toward and past the rear of the house where there is a retaining wall about four feet high, from which a person standing thereon, "could see at a level of three to four feet below the sill of a rear window in the second floor" of the house. The basement is level with the street in the front of the house and contains an auto garage which is entered by a driveway over the pavement. In the rear of the garage there are steps leading from it to the first floor of the house.

On May 22, 1937, three revenue agents, A. D. Bressler, W. S. Geis, and an agent by the name of Richards who does not appear to have been present at the trial, saw Ralph Feldman loading his automobile in the rear of what is known as a supply house—where yeast, sugar, cans and other supplies fit for making and marketing liquor and alcohol are kept and sold—on Fullerton Street in Pittsburgh. They followed Feldman from the supply house to his residence on Montville Street. They stopped some distance from the house and as they approached Feldman's residence, they smelled the odor of cooking mash. When Feldman had driven his car into the garage, the agents drove near to the front of the house and as they got out of their car, Geis went to the door of the garage and Bressler and Richards went around to the rear of the house.

As Geis looked through the glass doors of the garage, he saw Feldman run up the

stairs leading from the garage to the first floor of the house. He had in his hand a brown paper bag which he had obtained at the supply house. Geis then opened the door and went into the garage where he saw sacks of white sugar, "three 5-gallon cans of tax unpaid moonshine whiskey". In the car there were eight empty five-gallon cans.

Standing on the retaining wall in the rear of the house, Bressler saw, through a window in the second floor, a still in full operation and at the same time smelled a strong odor of cooking mash coming from the window.

While Bressler was standing on the retaining wall, Ralph Feldman ran out of the kitchen door in the rear of the house almost into the arms of Richards who was standing near the door. When he saw Richards, he turned and ran back into the kitchen. Richards and Bressler then went into the kitchen and arrested him. On the table was a brown paper sack or bag, containing twenty pounds of wet yeast, resembling the one they had seen Ralph Feldman bring out of the supply house and later take from his car up to the first floor of his home.

About this time the other defendant, Jacob Feldman, in his underwear, came from upstairs into the kitchen. He was also then and there arrested.

Geis was called from the basement garage and the premises were searched. The agents found a fifty-gallon still in operation on the second floor, sitting on a ten burner gas stove, five 100-pound sacks of white sugar, eight empty five-gallon cans, twelve and one-half gallons of moonshine whiskey, all on the second floor, and three five-gallon cans full of moonshine whiskey in the garage, all tax unpaid.

A number of times before, these agents, or some of them, had seen the defendants making purchases at the supply house or store and had tried to follow them to the still, but had lost them in traffic.

Motions were timely made to suppress the evidence discovered in the house, but they were overruled and the evidence on which the defendants were convicted was admitted at the trial.

The defendants contend that the "search of their home, and the seizure therein of the still, mash and tax unpaid liquor was unreasonable and in violation of their rights under the Fourth Amendment of the Constitution of the United States."

On the contrary, the Government "contends that an open violation of law took place in the presence of its Officers, which gave them probable cause and justification for arresting appellants without a warrant and contemporaneously searching said premises and seizing contraband therein."

The whole and sole question is whether or not the arrest of the defendants and consequent search and seizure of the still and other materials and utensils for illegally manufacturing liquor, under the circumstances as stated above, violated the rights guaranteed to the defendants by the Fourth Amendment, U.S.C.A.Const. If it did, then the court erred in overruling the motion to suppress the evidence and in admitting it at the trial.

■ It should be kept in mind that the defendants were committing a felony in their home and the commission of the crime was witnessed by the revenue agents before they entered the kitchen. The protection of the Fourth Amendment does not extend to the land surrounding the house. United States v. McBride, D.C., 287 F. 214, 216; Koth v. United States, 9 Cir., 16 F.2d 59; Schnitzer v. United States, 8 Cir., 77 F.2d 233. The agents could clearly see and Bressler did see the still in full operation while he was standing on the retaining wall, without entering the house. There is no denial of the facts for the defendants did not offer any testimony. Ralph Feldman was arrested while attempting to escape after the felonies, which they had committed and were committing, had been discovered. The evidence of the commission of the crimes which the agents discovered without entering the house would alone have sustained a conviction. The agents did not enter the house to discover whether or not a crime had been committed. This they already knew. The crime was being committed in their presence. They saw the still in operation; they smelled the odor from the cooking mash as it came from the house and filled the atmosphere surrounding it.

Under the circumstances the arrest of the defendants was lawful. In the case of Agnello et al. v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 5, 70 L.Ed. 145, 51 A.L. R. 409, the court said: "The right without a search warrant contemporaneously to search persons lawfully arrested while

committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody is not to be doubted. See Carroll v. United States, 267 U.S. 132, 158, 45 S.Ct. 280, 69 L.Ed. 543 [39 A.L.R. 790], Weeks v. United States, 232 U.S. 383, 392, 34 S. Ct. 341, 58 L.Ed. 652, L.R.A.1915B, 834, Ann.Cas.1915C, 1177."

The search and seizure in the case at bar were contemporaneous with the arrest and were legal. Agnello v. United States, supra; Parks v. United States, 5 Cir., 76 F.2d 709; United States v. Lee, 2 Cir., 83 F.2d 195; Papani v. United States, 9 Cir., 84 F.2d 160; United States v. 71.41 Ounces Gold Filled Scrap et al., 2 Cir., 94 F.2d 17.

The syllabus in Rocchia v. United States, 9 Cir., 78 F.2d 966, summed up the law there declared as follows: "Officers who detected strong odor of fermenting mash and distillation, and who heard still in operation before entering building, had reasonable cause for believing that crime was being committed in their presence and could enter building and arrest defendant without first obtaining warrant, and as incident thereto could search premises and seize property used in commission of crime." The law declared in this case is applicable to the facts in the case at bar and the judgments are affirmed.