**UNITED STATES v. CARTER.**

Crim. A. No. 13981.

United States District Court
W. D. Pennsylvania.

Feb. 3, 1954.

John W. McIlvaine, U. S. Atty., John A. DeMay, Jr., Asst. U. S. Atty., Pittsburgh, Pa., for the Government.

Gerald B. Greenwald, I. Leonard Greenwald, Pittsburgh, Pa., for defendant.

MARSH, District Judge.

An indictment containing five counts was returned against the defendant, Everett N. Carter. The first count charged the carrying on of the business of a distiller without having given the bond required by law, 26 U.S.C.A. § 2833. The second count charged the carrying on of the business of a distiller with intent to defraud the United States of the tax upon a certain quantity of spirits distilled by him, id. The third count charged possession of an unregistered still and distilling apparatus, 26 U.S.C.A. § 2810. The fourth count charged the making and fermenting of a certain quantity of mash fit for distillation and production of alcohol in a building and on premises other than a duly authorized distillery, 26 U.S.C.A. § 2834. The fifth count charged the depositing and concealing of a certain quantity of distilled spirits with intent to defraud the United States of the tax imposed thereon, 26 U.S.C.A. § 3321.

Carter presented a petition to suppress evidence seized in a shed on his property by revenue agents without a search warrant following alleged illegal entry upon his property. After hearing, the court makes the following

### Findings of Fact

1. In January, 1953, an investigator of the Alcohol and Tobacco Tax Division of the United States Treasury received general information concerning illegal manufacture of liquor and other violations allegedly taking place in the vicinity of Webster Village, Rostraver Township, Westmoreland County, Pennsylvania. Six months later all the leads had been run down with the exception of investigating two abandoned coal mine openings for a still.

2. Two of the agents had previously observed these coal mine openings in the vicinity of the property of the defendant, Everett N. Carter.

3. The defendant's property consisted of 4 acres of land, having thereon erected his dwelling, the adjacent dwelling of an adult son, a small frame shed, and other outbuildings. The neighborhood was sparsely settled.

4. On June 29, 1953, about 12:15 P. M., three agents of the Division, John C. Clifford, Alva D. Stutler and Joseph N. Sample, for the purpose of investigating these old coal mine openings, drove their car off the public highway into defendant's driveway in front of his dwelling.

5. On this trip there were three agents instead of the usual detail of two agents because all the other leads had been eliminated and a discovery of a still in a mine opening was anticipated.

6. In the driveway the agents inquired of the eight-year old son of the defendant whether his father was at home, and followed the lad up the driveway to the rear of defendant's dwelling house, then to the rear of his son's dwelling house, then to the shed which was a few feet from the latter.

7. The agents intended to make inquiries of Mr. Carter concerning the alleged still in the neighborhood of Webster Hollow and the abandoned mine openings nearby; and ask permission to investigate the mine openings if they were on his land. They did not know when they drove into the driveway that

defendant himself was illegally manufacturing whiskey in the shed. It is to be inferred that, as a precautionary measure, all three agents went along on the walk to the shed to make inquiries because it was a possibility that a resident of the dwellings might be operating a still in one of the coal mine openings.

8. When the agents passed to the rear of the dwelling houses and from there to the shed they detected a strong odor resembling the cooking of mash.

9. When the agent Clifford approached the shed the defendant opened its door and stepped out; upon seeing the agents he took a few quick steps in the opposite direction and then stopped and answered Mr. Clifford's questions.

10. Without touching any part of the shed and without entering therein all the agents could plainly see through the open door a still in operation in the interior of the shed. They could see the fire used to cook the mash and could smell the mash.

11. Agent Clifford exhibited to defendant his credentials and arrested him.

12. Defendant then and there frankly admitted to the agents that he owned the still and was making whiskey for his own use.

13. After the arrest the agents entered and searched the shed, destroyed the still and took samples of the mash and whiskey found therein, which items of evidence are the subject of defendant's petition to suppress.

14. The agents did not have a search warrant nor a warrant for the arrest of the defendant.

15. As a result of the seizure of the mash and whiskey defendant was indicted.

### Discussion

■■ The entry upon defendant's land to make inquiries concerning a still supposedly located in an abandoned coal mine opening somewhere in the vicinity and to seek permission to inspect nearby openings on the land of the defendant was not prohibited by the Fourth Amendment, even though the agents anticipated discovery of a still in one of the latter. Hester v. United States, 1924, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898; Ellison v. United States, D.C.Cir. 1953, 206 F.2d 476; Martin v. United States, 5 Cir., 1946, 155 F.2d 503. When the defendant emerged from his shed, exposing to the agents' gaze an operating still which they could both smell and see through the open door, they not only had probable cause to arrest defendant but it was their duty to do so; and an immediate search of the shed and seizure of evidence was reasonable and proper. United States v. Rabinowitz, 1950, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; Martin v. United States, 4 Cir., 1950, 183 F. 2d 436, certiorari denied 340 U.S. 904, 71 S.Ct. 280, 95 L.Ed. 654; Fisher v. United States, D.C.Cir.1953, 205 F.2d 702; United States v. Feldman, 3 Cir., 1939, 104 F.2d 255, certiorari denied 308 U.S. 579, 60 S.Ct. 97, 84 L.Ed. 485.

As stated in the Ellison case, 206 F. 2d at page 478: "There was no intrusion into [defendant's] privacy. Nor did mere observation constitute a 'search.' If an officer sees the fruits of crime—or what he has good reason to believe to be the fruits of crime—lying freely exposed upon a suspect's property, he is not required to look the other way, or disregard the evidence his senses bring him. Law enforcement is difficult enough, without requiring a police officer to free his mind of clues lying flatly before him."

■■ Undoubtedly, revenue officers may make a valid arrest without a warrant for a crime committed in their presence, or for a felony of which they had reasonable cause to believe defendant guilty. Hester v. United States, supra; Martin v. United States, 5 Cir., 155 F.2d 503, supra. In the Martin case, 155 F.2d at page 505, the court said: "When an officer is apprised by his senses that a crime is being committed in his presence,

he may arrest and search and seize without a warrant." [1]

The defendant argues that the entry onto his land was an illegal trespass and vitiates the arrest, search and seizure subsequently occurring, but in Hester v. United States, supra, where the agents went upon the land in consequence of information, Mr. Justice Holmes held that even if there had been a trespass, such a conclusion would not necessarily follow. In United States v. Feldman, supra, 104 F.2d at page 256 the court held that "The protection of the Fourth Amendment does not extend to the land surrounding the house."

In the instant case, access to the shed and the seizure of the evidence were not gained in the first instance by color of office as in Johnson v. United States, 1948, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436, cited by defendant. There was no raid or other show of authority by the agents. The shed was entered and the evidence seized only in consequence of the prior arrest.

Kroska v. United States, 8 Cir., 1931, 51 F.2d 330, is also cited by defendant as authority for an opposite conclusion. In that case the defendant was charged with transporting moonshine whiskey in violation of the National Prohibition Act. The officers had observed the defendant's coupe turn from the public highway into his farmyard. They entered the yard not, as here, for some lawful purpose such as making inquiries, but ostensibly for the purpose of searching the coupe which they could not legally have done even on the public highway without probable cause. Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543.

In the yard they observed a keg in the partially open back deck of the coupe and detected the odor of whiskey. Thereupon one of the officers entered the defendant's dwelling uninvited and arrested him. They did not have a warrant for search or arrest. Since the record did not disclose probable cause for entering upon defendant's land and making a search the court branded the seizure and arrest as unwarranted and illegal.

We think there is an obvious distinction between the Kroska case and the instant case. There the evidence was seized by the agents without probable cause; "The record is absolutely barren of any evidence indicating why the prohibition agents went to defendant's farm." [51 F.2d 332.] Here the agents went upon the land to make inquiries and the evidence was seized after defendant exposed the operating still to the view of the agents; it was the act of the defendant which gave the agents reasonable grounds to suspect that a felony was being committed, probable cause to arrest him, and justification to seize the evidence.

United States v. Feldman, supra, decided in this Circuit, presents facts which are quite similar to those in the case at hand, except that there the agents suspected the defendant of making moonshine whiskey before they went upon his land and discovered the commission of felonies by looking through the windows and detecting a strong odor of cooking mash coming from the windows. The appellate court there held, as we do here, that the subsequent arrest and seizure of evidence were legal though made without warrants.

## Conclusions of Law

1. On June 29, 1953, the defendant was engaged in the commission of felonies prohibited by the Internal Revenue Code, 26 U.S.C.A. §§ 2833, 2810, 2834 and 3321, by illegally operating a still in a shed located upon his land.

2. The shed formed a part of the curtilage of the defendant's dwelling house.

3. Prior to entering upon defendant's property the agents did not have probable cause upon which to base a warrant of arrest for defendant or to secure a search warrant for the shed.

1. This is also the Pennsylvania law. Commonwealth ex rel. Spencer v. Ashe, 364 Pa. 442, 71 A.2d 799. State law determines the validity of arrest without a warrant. United States v. Di Re, 332 U. U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210.

4. The entry of the agents into the defendant's driveway, their walk to the door of the shed to make inquiries, and their observance of the operating still through the door opened voluntarily by the defendant, did not constitute an unreasonable search prohibited by the Fourth Amendment to the Constitution of the United States.

5. After smelling the cooking mash and observing the still in operation in the shed through its open door, the agents had probable cause to believe that a felony was being committed in their presence.

6. The arrest of defendant without a warrant was based upon probable cause and was valid.

7. The shed was under the immediate control of defendant at the time he was arrested.

8. The search of the shed and the seizure of samples of mash and whiskey for evidentiary purposes following the valid arrest of defendant and his admission of guilt constituted a reasonable search and seizure and was not within the prohibition of the Fourth Amendment.

9. The motion of defendant to suppress evidence should be denied.