**UNITED STATES of America,**
**Plaintiff,**

v.

**R. L. FOWLER, Defendant.**

Crim. No. 24186.

United States District Court
S. D. California, Central Division.

June 10, 1955.

Laughlin E. Waters, U. S. Atty., Louis Lee Abbott, Robert K. Grean, Asst. U. S. Attys., Los Angeles, Cal., for plaintiff, United States.

Cornell Ridley, Los Angeles, Cal., for defendant.

BYRNE, District Judge.

The defendant Fowler was indicted for violation of U.S.C.A. Title 21, § 174 (Il-

legal Concealment of Narcotics). At the trial the Government offered in evidence certain articles including a garage key and a substance alleged to be heroin. The defendant objected to the evidence on the ground that it had been discovered in an illegal search and seizure.[1]

■ When, after the trial is under way, claim is made that taint attaches to any portion of the Government's case, the Court must be satisfied that the accused could not at an earlier stage have had adequate knowledge to make his claim.[2] Here, the defendant asserted that he had made a motion for the suppression of the evidence before trial which was heard and denied by the judge in charge of the criminal calendar. The case was subsequently assigned to me for trial.

To be required to review the ruling of an associate of co-ordinate jurisdiction is an unpleasant task for a judge. However, the Supreme Court has left no latitude for squeamish judges. In Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 266, 65 L.Ed. 647, the court said: " * * * where, in the progress of a trial, it becomes probable that there has been an unconstitutional seizure of papers, it is the duty of the trial court to entertain an objection to their admission or a motion for exclusion and to consider and decide the question as then presented, even when a motion to return the papers may have been denied before trial."

It would appear then that if a timely motion to suppress is made in proper form before trial and denied, the accused may renew his motion during the trial. Not having a copy of the transcript of the hearing on the motion to suppress, the trial court was unable to determine whether such timely motion to suppress had been made. The objection was overruled and the evidence admitted subject to a motion to strike the evidence after the court had had an opportunity to read the transcript of the proceedings at the hearing on the motion to suppress. The trial concluded before a copy of the transcript was available. A motion for judgment of acquittal[3] was made at the close of all the evidence. The Court reserved decision on the motion, submitted the case to the jury, and the jury returned a verdict of guilty. The defendant renewed his motion under Rule 29(b) for acquittal or for a new trial. The ruling on the motion is governed by the determination of whether or not the evidence should have been suppressed because obtained in an unlawful search and seizure.

The facts relating to the Government's acquisition of the evidence sought to be suppressed, is in substance as follows: Three state officers and one federal officer arrested the defendant as he sat in his automobile at an intersection waiting for the traffic signals to change. After searching the defendant and his car, they returned everything taken from his person with the exception of three keys. In response to the officers' inquiry, the defendant advised them that one of the keys was to the front door of his apartment. The officers parked the defendant's car on the street and took him in their car about two blocks to his apartment where the officer who had retained the keys unlocked the door, and the four officers with the defendant, entered the

---

1. The Fourth Amendment to the Constitution reads: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

2. Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307; Rose v. United States, 9 Cir., 1945, 149 F.2d 755, 760; Rocchia v. United States, 9 Cir., 1935, 78 F.2d 966, 969.

3. Rule 29(b), Federal Rules of Criminal Procedure, 18 U.S.C.A.

apartment. The officers testified that the defendant told them they could search the apartment if they wanted to. The defendant denied making any such statement. The officers, while conducting a thorough search of the apartment, turned back the dining room rug and found a key on the floor beneath the rug. The defendant denied any knowledge of where it came from, who it belonged to, or what lock it was for. Later, the defendant, in the custody of the four officers, was taken out of the apartment and to the garages in the rear of the apartment house. Two of the garages had locks, one of which was unsnapped and the other was locked. The officer with the key tried it on the unsnapped lock and learned that it did not fit. He then tried it in the snapped lock and the lock opened. They all entered the garage and the officers found in excess of an ounce of heroin concealed in a hat box. The defendant denied knowledge of the narcotics and disclaimed any interest in or right to possession of the garage.

The Government contends that even if the search and seizure was unlawful, the evidence was admissible because the defendant, in his written motion to suppress, failed to specify the particular evidence sought to be suppressed.

The record shows that at the time of the hearing on the motion to suppress, counsel for the defendant stated to the court: "I don't know whether the affidavit made by the defendant is sufficient." The court told him to "proceed with your prima facie showing, to be made by oral testimony at this time". The defendant took the witness stand and testified that the officers took three keys from his pockets at the time they arrested him; that they used one of these keys to gain access to his apartment; that they found a small key under the rug in his apartment which they used to unlock the garage in which they found the narcotics. Counsel for the defendant argued that the arrest was unlawful as was the search of the defendant's person

and apartment and therefore the keys and the narcotics obtained by means of the keys should be suppressed. The defect in the failure of the motion papers to specify the evidence sought to be suppressed was cured by the defendant's oral testimony.

■■ The Government presented no evidence of probable cause for the arrest. However, assuming *arguendo* the legality of the arrest, the search of the defendant's apartment was unlawful. A search made as an incident to a valid arrest is lawful. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399. Where, as here, officers drive an accused two blocks from the place of arrest to the apartment searched, there is an absence of the element of reasonableness which is required to make the search an incident to the arrest. See Agnello v. United States, 269 U.S. 20, 31, 46 S.Ct. 4, 70 L.Ed. 145.

■ Accepting the officers' statement that the defendant told them they could make the search, the search without a warrant was illegal. The defendant was under arrest when the officers, with the accused's key in their possession, took him to the apartment where, they assert, he consented to the search. In Judd v. United States, 1951, 89 U.S.App.D.C. 64, 190 F.2d 649, 651, the defendant's statement while in jail that, "I have nothing to hide, you can go there and see for yourself", was held not to constitute consent to a search of his home without a warrant. The Court said: "Searches and seizures made without a proper warrant are generally to be regarded as unreasonable and violative of the Fourth Amendment. True, the obtaining of the warrant may on occasion be waived by the individual; he may give his consent to the search and seizure. But such a waiver or consent must be proved by clear and positive testimony, and it must be established that there was no duress or coercion, actual or implied. Amos v.

# 502

United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654; United States v. Kelih, D.C.S.D.Ill.1921, 272 F. 484. The Government must show a consent that is 'unequivocal and specific' (Karwicki v. United States, 4 Cir., 55 F.2d 225, 226), 'freely and intelligently given.' Kovach v. United States, 6 Cir., 53 F.2d 639. Thus 'invitations' to enter one's house, extended to armed officers of the law who demand entrance, are usually to be considered as invitations secured by force. United States v. Marquette, D.C.N.D.Cal. 1920, 271 F. 120. A like view has been taken where an officer displays his badge and declares that he has come to make a search (United States v. Slusser, D.C. S.D.Ohio 1921, 270 F. 818), even where the householder replies 'All right.' United States v. Marra, D.C.W.D.N.Y.1930, 40 F.2d 271. A finding of consent in such circumstances has been held to be 'unfounded in reason'. Herter v. United States, 9 Cir., 27 F.2d 521. Intimidation and duress are almost necessarily implicit in such situations; if the Government alleges their absence, it has the burden of convincing the court that they are in fact absent.

"This burden on the Government is particularly heavy in cases where the individual is under arrest. Non-resistance to the orders or suggestions of the police is not infrequent in such a situation; true consent, free of fear or pressure, is not so readily to be found. United States v. Novero, D.C., 58 F.Supp. 275; United States v. McCunn, D.C.S.D. N.Y. 1930, 40 F.2d 295. In fact, the circumstances of the defendant's plight may be such as to make any claim of actual consent 'not in accordance with human experience', and explainable only on the basis of 'physical or moral compulsion'. Ray v. United States, 5 Cir., 84 F.2d 654, 656." See also on "consent" to search, Nelson v. United States, 1953, 93 U.S.App.D.C. 14, 208 F.2d 505, certiorari denied 346 U.S. 827, 74 S.Ct. 48, 98 L.Ed. 352.

■ The Government also questions the standing of the accused to object to the evidence where he disclaims any ownership or right to possession of the articles seized and denies any proprietary interest or right to possession of the garage in which the narcotics were found. The federal courts have denied the benefit of the exclusionary rule to those not the victims of the unconstitutional search and seizure, and Rule 41 (e) of the Federal Rules of Criminal Procedure, which the Advisory Committee tells us, 18 U.S.C.A. note to Sec. 41 (e), "is a restatement of existing law and practice", states that it is the "person aggrieved" by an unlawful search and seizure who may move to suppress the evidence so obtained.

■ One has the requisite standing as a "person aggrieved" if he claims ownership of the seized property though the premises searched belonged to another. United States v. Jeffers, 1951, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59. When the premises searched were those of the defendant he has the requisite standing. McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153; Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436; Harris v. United States, supra. Nor is it necessary that the accused claim an interest in the property seized if he has an interest in the premises searched. United States v. Blok, 1951, 88 U.S.App.D.C. 326, 188 F.2d 1019.

In the instant case the apartment where the garage key was found under the rug was the home of the accused. The search of the apartment being unlawful, the seized key which unlocked the door to the garage where the narcotics were found should have been suppressed.

■ A more troublesome question is whether the contraband narcotics should be suppressed. The garage where the narcotics were found was not attached in any way to the defendant's apartment. If a garage is so situated that it can be held to constitute a part of a person's dwelling, in the absence of a lawful ar-

rest, a search warrant is necessary. Taylor v. United States, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951 (garage adjacent to residence); Temperani v. United States, 9 Cir., 1924, 299 F. 365 (garage underneath a one-story dwelling). It has been held in this circuit that where a garage is detached from the residential structure no warrant is necessary. Carney v. United States, 9 Cir., 1947, 163 F.2d 784. If the only search involved was that of the garage, it is doubtful that it could be deemed unlawful, and if it were unlawful, the defendant would not have standing to suppress the evidence as he disclaimed any interest in the premises searched or in the articles seized.

The real problem is whether the unlawful search of the defendant's apartment and the seizure of the key to the garage so tainted what was found in the garage that it should be suppressed as fruit of the poisonous tree. The two basic cases on this point are Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (a 4th Amendment case) and Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (a wire-tapping case). (The same basic rule obtains in both types of cases. Indeed, the Court of Appeals in United States v. Nardone, 2 Cir., 106 F.2d 41, thought the case distinguishable because it was a wire-tapping case and not a 4th Amendment case, but was reversed by the Supreme Court.)

In the Silverthorne case [251 U.S. 385, 40 S.Ct. 183], the two Silverthornes were arrested at their homes, and while they were detained there, Government men without a shadow of authority went to the office of their company and made a clean sweep of all the books, papers and documents found there. The Government later sought to avail itself of the knowledge obtained from these papers as a basis for a new indictment. The Supreme Court stated: "The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all. Of course this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the Government's own wrong cannot be used by it in the way proposed."

In the Nardone case, the question before the Court was whether the trial judge had improperly refused to allow the accused to examine the prosecution as to the uses to which it had put the information obtained from a wire tap, which the Court in a former case, Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314, found to have vitiated the original conviction. On page 341 of 308 U.S., on page 268 of 60 S.Ct., the Court stated: "Here, as in the Silverthorne case, the facts improperly obtained do not 'become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the Government's own wrong cannot be used by it' simply because it is used derivatively."

The defendant is granted a new trial. Prior to trial the accused, if he be so advised, may notice a motion to suppress the various articles offered in evidence at the last trial. With respect to the articles seized in the garage, the Government should be given an opportunity at the hearing on the motion to suppress, to show that its proof had an independent origin, i. e., that the basis for the search of the garage was a source wholly independent of what transpired in the apartment. If it can convince the Court of such independent source, the evidence found in the garage should be admitted, otherwise it should be suppressed. See Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307, for suggested procedure.