**UNITED STATES of America**

v.

**Wilfred J. BROUGHER.**

**Cr. No. 14476.**

United States District Court
W. D. Pennsylvania.
April 13, 1956.

D. Malcolm Anderson, Jr., U. S. Atty., Thomas Shannon, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Norman A. Shaulis, Somerset, Pa., for defendant.

MARSH, District Judge.

An indictment containing five counts was returned against the petitioner, Wilfred J. Brougher. They charged that he carried on the business of a distiller without having given bond; that he carried on said business with intent to defraud the United States of the tax upon twelve gallons of distilled spirits; that he had possession of an unregistered still and distilling apparatus; that he made and fermented 475 gallons of mash fit for distillation and production of spirits and alcohol in a building and on premises other than a duly authorized distillery; and that he deposited and concealed 12 gallons of distilled spirits with intent to defraud the United States of the tax imposed thereon; in violation of §§ 5606, 5174(a), 5216(a), 7206(4), Title 26 U.S.C.

The petitioner requests the court to suppress evidence obtained by Otto Kopp, an investigator of the Alcohol and Tobacco Division of the United States Treasury Department because he violated the laws pertaining to search and seizure and the Fourth and Fifth Amendments of the Constitution.

On November 17, 1954, Mr. Kopp, having theretofore received information causing him to suspect[1] the illegal manufacture of alcohol in a certain house owned by petitioner and his wife, requested assistance at the Pennsylvania State Police Barracks located in the Borough of Somerset, Somerset County, Pennsylvania. Private Thomas H. Sterner was assigned, and he and the agent proceeded together in a United States Treasury car to petitioner's property situated in a sparsely settled neighborhood of Allegheny Township, Somerset County.

---

1. Officers may use hearsay statements along with other facts and circumstances in evaluating reasonable cause for making an arrest and a search and seizure.

United States v. Bianco, 3 Cir., 189 F.2d 716; Id., D.C.W.D.Pa.1950, 94 F.Supp. 239, reversed on other grounds.

This property consisted of about 21 acres of wooded land in the mountains, having thereon erected a bungalow-type dwelling approximately 24′ x 21′ and an adjacent small log cabin. The bungalow was furnished and consisted of 3 rooms; the log cabin contained one room with a loft. A small lawn, garden plot and 16 orchard trees surrounded the house. Two township dirt roads passed through defendant's land; one connected with a macadam highway known as Route 160 which leads to Somerset Borough, about 18 miles distant.

The defendant, his wife and their minor son lived in a rented house in Somerset Borough during the school months and resided in their bungalow in the township during the summer months.

About 10:00 o'clock in the morning, while on the township road, Private Sterner and Agent Kopp detected the odor of alcohol and cooking mash emanating from the bungalow. Finding the bungalow unoccupied, they looked through a window observing on the floor of the kitchen bags of sugar, of rye, some hose, wire and an electric motor pump. These they recognized as articles frequently used in the manufacture of moonshine whiskey. Drapes were tightly drawn over all the windows except those in the kitchen. The windows were steamed to some extent and those in the rear were splattered with mud, as was the back of the bungalow; they thought the mud came from spinning tires because two deep ruts partly covered with dry leaves were observed nearby.

The officers believed whiskey was being illegally distilled inside the bungalow; they also believed that it was essential that they procure a search warrant in order to break into it. Accordingly, they proceeded to the office of the United States commissioner in Somerset.

The commissioner, a lawyer, was not in his office, but he was available at his home. Although the commissioner and the agent conversed over the telephone, the latter did not indicate urgency in having the search warrant issued. Also located in Somerset is the courthouse of Somerset County where a judge of the Court of Common Pleas, a Pennsylvania court of record, is normally available. No effort was made by the agent to determine whether the judge was in the courthouse. Instead, the officers went to the office of a justice of the peace (passing the home of the commissioner on the way) where Private Sterner secured a state search warrant addressed to "Penn'a. [sic] State Police and assistants, agents and deputies, members of the Pennsylvania State Police, acting under him or them or any of them".[2]

They then proceeded to the State Police Barracks where a request was made for a detail to aid them. Officers Marenna and Lutz were assigned. At 1:05 P.M. these officers arrived at the place where petitioner lived with his family in Somerset Borough.

After knocking, they entered the house and Lutz requested petitioner to get his coat on,—that he wanted to talk to him for a little while at the barracks. Petitioner had not eaten his dinner which was ready, but he agreed to go with the officers. Mrs. Brougher was advised that they would not be long. A friend of petitioner who was in the house at the time was asked by Lutz for his identification. On the way to the barracks in the state police car, Lutz was told over the radio telephone that Sterner and Kopp had already left for petitioner's bungalow in the township. The petitioner agreed to accompany the officers there.

When they arrived, Sterner, who was known to the petitioner, introduced Kopp

---

**2.** The warrant was a form, prescribed by the Pennsylvania Liquor Control Board, and was issued on oath of Sterner alleging probable cause for his belief that alcohol, etc., was being unlawfully manufactured and unlawfully possessed in petitioner's dwelling. The house was described with particularity.

as an agent of the United States Treasury Department. Sterner told the petitioner he had a search warrant and requested him to open the door, simultaneously exhibiting a folder from which the warrant slightly protruded. The petitioner did not ask to see or read the warrant nor was it read to him, but he readily agreed and did unlock the door, after which all parties entered the large main room in the bungalow.

Immediately after entering and glancing at the contents of the room, Agent Kopp placed petitioner under arrest. In the room was a still full of warm mash, 11 barrels of mash, 12 gallon jugs of moonshine, and other apparatus used in manufacturing moonshine whiskey. Some of petitioner's furniture was pushed to one side and some was piled on a mattress in the adjoining bedroom. Later, the petitioner unlocked the log cabin which was full of empty gallon jugs. The officers destroyed the contraband. With Sterner's acquiescence, Kopp took possession of the still and other apparatus as evidence.[3]

Neither a copy of the search warrant nor a receipt for the property seized was given to the petitioner as is required by Rule 41(d), Fed.R.Crim.P., 18 U.S.C., in executing a federal search warrant; it does not appear than an inventory was made in the manner specified in the Rule.

Petitioner was given an opportunity to raise bail, but upon his failure to do so, was lodged in the county jail. A hearing was held the next morning before the United States commissioner in Somerset, at which time he issued a warrant of arrest.

We conclude that the petitioner's presence at his bungalow was procured by the two state policemen under color of

their office and in submission to their authority; and they and the federal agent were admitted into the bungalow likewise under color of their office and in submission to the state search warrant.

In view of the foregoing facts and circumstances, it is the opinion of the court that the petition must be granted.

■ Preliminarily, we put to one side the constitutional questions involved. The search of petitioner's bungalow was a federal undertaking. Lustig v. United States, 1949, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819; Byars v. United States, 1927, 273 U.S. 28, 47 S. Ct. 248, 71 L.Ed. 520. As such the federal agent was required to conduct the search and seizure pursuant to federal law, i. e., under the authority of a federal search warrant as prescribed by Rule 41, Fed.R.Crim.P. A state search warrant issued by a justice of the peace to a state policeman, who was assisting the federal agent, will not suffice. Rule 41 embodies the federal law on the subject of search and seizure. The search warrant used must be tested by this Rule as it is a restatement of "existing law and practice".[4] Among other details, the Rule specifically designates[5] who may issue it and a justice of the peace is not included.

As stated in Byars v. United States, supra:

"Whether it [the state search warrant] is good under the state law it is not necessary to inquire, since in no event could it constitute the basis for a federal search and seizure."

In 1919 it was specifically provided that a justice of the peace could issue a search warrant in aid of the enforcement of the National Prohibition Act,[6]

---

3. See Sterner's return on search warrant.

4. See advisory committee statement, 18 U.S.C.A., note to Rule 41.

5. Rule 41(a): "Authority to Issue Warrant. A search warrant authorized by this rule may be issued by a judge of the United States or of a state or territorial court of record or by a United States commissioner within the district wherein the property sought is located."

6. See Title 27 U.S.C.A. § 11, now repealed; § 591 of former Title 18 referred to therein may be found at § 3041, Title 18 U.S.C. (1950 ed.).

but since its repeal, Congress has not seen fit to empower him to issue search warrants generally. Had Congress intended to bestow such authority on a justice of the peace, it would have specifically so provided in Rule 41(a).[7]

■ The government argues with merit that the search was not unreasonable and thus was not in violation of the Fourth Amendment. We are constrained to agree with the government on this point. Although the search was a federal undertaking, it was performed jointly by state and federal officers after procuring a state search warrant issued upon probable cause for state liquor law violations. But, notwithstanding, we think the seized evidence must be excluded in a federal prosecution because the federal agent did not comply with Rule 41 by procuring a search warrant from the judge or United States commissioner in Somerset as prescribed in paragraphs (a) and (c), and executing it in the manner prescribed by paragraph (d).

In Rea v. United States, 1956, 350 U.S. 214, 76 S.Ct. 292, 294, federal courts are admonished to police and enforce the provisions of Rule 41 by suppressing evidence obtained in violation thereof. As was there said:

> "The obligation of the federal agent is to obey the Rules. They are drawn for innocent and guilty alike. They prescribe standards for law enforcement. They are designed to protect the privacy of the citizen, *unless the strict standards set for searches and seizures are satisfied.*" (Emphasis supplied.)

See also United States v. Klapholz, 2 Cir., 1956, 230 F.2d 494.

One of the "strict standards set" is that the judicial officer designated to stand between the privacy of the citizen and a search shall be a judge or a United States commissioner,—not a justice of the peace. The policy expressed in Rea and followed in Klapholz we think is especially defeated in this case where a federal agent by-passed an available United States commissioner and ignored a judge who might have been available in Somerset, and conducted a search of a private dwelling under the authority of a state search warrant issued by a justice of the peace to a state policeman.

■ The government has also taken the position that no search warrant was necessary and likens the petitioner's unoccupied cottage to a shack, Dulek v. United States, 6 Cir., 16 F.2d 275,[8] a cave, Stark v. United States, 8 Cir., 44 F.2d 946,[9] a hog shed, Thomas v. United States, 10 Cir., 154 F.2d 365.[10] The analogy is defective because in those cases the searched premises were never inhabited as homes. The dwelling here was petitioner's summer home and, although unoccupied at the time of the search, was within the protection of federal law relating to search and seizure. Steeber v. United States, 10 Cir., 1952, 198 F.2d 615, 33 A.L.R.2d 1425.

■ The government also contends that petitioner voluntarily unlocked the door and consented to the search. In view of the facts, little need be said in this regard. In the presence of four

---

7. As was said by Mr. Justice Frankfurter dissenting in United States v. Rabinowitz, 339 U.S. 56, at page 74, 70 S.Ct. 430, at page 438, 94 L.Ed. 653:

"Congress, despite repeated requests by Attorneys General, long refused to make search by warrant generally available as an aid to criminal prosecution * * * *and even then it did not do so except under conditions most carefully circumscribed.*2

2 "See Title XI of the Act of June 15, 1917, 40 Stat. 217, 228, now Rule 41, of

the Rules of Criminal Procedure, 18 U.S.C.A. For a table of congressional legislation, indicating its scope, see the Appendix to the dissenting opinion in Davis v. United States, 328 U.S. 582, 616, 66 S.Ct. 1256, 1272, 90 L.Ed. 1453." (Emphasis supplied.)

8. Government's pre-trial brief, p. 5.

9. Government's pre-trial brief, p. 6.

10. Government's pre-trial brief, p. 6.

officers, one of whom advised that he had a search warrant, petitioner's compliance with the request that he unlock the door cannot be squared with that type of voluntary act understandingly performed by one free from coercion, actual or implied, which will waive the protection of the law relating to search and seizure. Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436; Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654; United States v. Fowler, D.C.S.D.Cal.1955, 17 F.R.D. 499.

■ A further argument advanced by the government is substantially this: There was in fact no necessity for a search warrant in this case. It contends that the search was made in the light of facts and circumstances which would justify reasonably prudent officers in believing that an offense was being committed in or upon the premises searched. It claims that such a search without a warrant is not prohibited by the Fourth Amendment, citing Walker v. United States, 5 Cir., 1955, 225 F.2d 447; Whitcombe v. United States, 3 Cir., 1937, 90 F.2d 290, 293; United States v. Esposito, D.C.E.D.Pa.1942, 45 F.Supp. 39.[11]

The majority in the Walker case held that a search warrant was necessary. In the Whitcombe case, none of the defendants claimed ownership of the property seized in the building searched, and, as the Court said, "they have no constitutional rights to object to its production in evidence and have no standing in order to avail themselves of the rights protected by the Fourth Amendment." In the Esposito case, it was perfectly obvious to the agents that persons inside the building were committing a crime.

In Taylor v. United States, 1932, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951, as in the instant case, odor was detected by officers while they were on the outside of the building, and *no one was inside the building*. It was there held that a search warrant was necessary to justify the search and seizure. See also United States v. One 1949 Buick Sedanette, D. C.Mass.1953, 112 F.Supp. 218.

No exceptional circumstances here existed making it impractical to secure a federal search warrant which would justify a departure from the principle laid down by the Taylor case. Cf. United States v. Jeffers, 1951, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59; Johnson v. United States, supra; McDonald v. United States, 1948, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153. Indeed, the officers themselves fully realized the necessity, as witness their return to Somerset to procure a search warrant.

If they had been really worried that someone [12] would remove or destroy the evidence while the agent went to Somerset for the warrant, and the state policeman was unwilling to remain on guard alone, a telephone call to the barracks from a farm house or nearby village would have procured the police detail to guard the bungalow, and the warrant could have been obtained, as well as the call made upon petitioner, at leisure. Even if they left the bungalow unguarded after telephoning, the time required for the detail to drive 18 miles would in all probability have been less than that required to remove and destroy the distilling equipment and other evidence.

The final argument made by the government is that the search was incident to a valid arrest without a warrant. But this arrest which took place after the unlawful search was not valid. Cf. Johnson v. United States, supra.

■ Neither was there a valid arrest in Somerset when the officers invited petitioner to accompany them.[13] It is certain that no crime had been committed by petitioner in the presence of

---

11. Government's brief, page 9, paragraph 2.

12. There was no convincing evidence that any one saw or recognized Sterner at the bungalow; the officer thought he

might have been observed by hunters who knew him.

13. The state policemen assert that they did not arrest petitioner at any time.

these officers, nor did they have reasonable cause to believe that petitioner had committed a felony which would have justified his arrest by them without a warrant agreeably to Pennsylvania law.[14] But even assuming arguendo that a valid arrest without a warrant had been made by the police in Somerset, it has been held to be unreasonable to transport the prisoner two blocks to his home and require him to open it up for search, United States v. Fowler, supra; here he was transported 18 miles.[15] A search made incident to a valid arrest must be reasonable in order to be lawful. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399.

An appropriate order will be entered.

14. See Commonwealth ex rel. Spencer v. Ashe, 364 Pa. 442, 71 A.2d 799.

15. The rule would be otherwise if a defendant, prior to arrest, voluntarily exposed the incriminating evidence inside his building to the officers on the outside thereof. United States v. Carter, D.C. W.D.Pa.1954, 118 F.Supp. 559; cf. United States v. Feldman, 3 Cir., 1939, 104 F.2d 255.