**UNITED STATES of America**

v.

**James Douglas KIDD**

and

**Harry Eugene Rogers.**

**Crim. 14815.**

United States District Court
W. D. Louisiana,
Shreveport Division.

July 5, 1957.

T. Fitzhugh Wilson, United States Atty., and Edward V. Boagni, Asst. United States Atty., Shreveport, La., for the Government.

Samuel P. Love, Love & Rigby, Shreveport, La., for defendants.

BEN C. DAWKINS, JR., Chief Judge.

Raised by a motion to suppress [1] certain evidence held by the Government, we have for consideration here the validity of the search and seizure by which the evidence was obtained, admittedly without a warrant of any kind.[2] A hearing on the motion has been held, from which the facts are found to be as follows:

Defendant James D. Kidd, twenty years old, is an Airman Second Class in the United States Air Force. On December 17, 1956, he was stationed at Barks-

---

[1]. Filed pursuant to Rule 41(e), Fed.Rules Criminal Proc., 18 U.S.C.:

"*Motion for Return of Property and to Suppress Evidence.* A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property and to suppress for use as evidence anything so obtained on the ground that (1) the property was illegally seized without warrant, or (2) the warrant is insufficient on its face, or (3) the property seized is not that described in the warrant, or (4) there was not probable cause for believing the existence of the grounds on which the warrant was issued, or (5) the warrant was illegally executed. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored unless otherwise subject to lawful detention and it shall not be admissible in evidence at any hearing or trial. The motion to suppress evidence may also be made in the district where the trial is to be had. The motion shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing."

[2]. Neither a warrant of arrest nor a search warrant was applied for or issued at any time.

dale Air Force Base, in Bossier Parish, Louisiana. During the afternoon of that date, he was ordered to his Squadron Commander's office where he was questioned about certain items of missing clothing. A "T" shirt and a sport shirt which were not his had been found in the bottom of his locker in the barracks. Other clothing, including a certain gray civilian suit, belonging to one of his fellow Airmen, also was missing, and was the principal object of the inquiry.

Kidd denied having stolen the articles found in his locker, which he contended were placed there by someone else without his knowledge. He also denied having taken any other clothing, particularly the suit, and insisted that he, too, was a victim of petty larceny, some of his own things being missing.

At this point his commanding officer called in the Base Air Police, who dispatched Staff Sergeant Robert S. Weber and Technical Sergeant Darden T. Thompson to the office. Upon the commanding officer's instructions, they immediately arrested [3] Kidd and took him to Air Police Headquarters for questioning. No formal charges were filed. He was held under restraint simply for "suspicion of larceny" or "investigation of larceny." [4]

3. His arrest technically was called an "apprehension" by Thompson, who admitted that it amounted to the same thing as a civilian arrest, in that Kidd was in custody and not free to leave until released. Articles 7, 9 and 10 of the Uniform Code of Military Justice, 10 U.S.C. §§ 807, 809, 810, read:

"§ 807. Art. 7. *Apprehension*

"(a) Apprehension is the taking of a person into custody.

"(b) Any person authorized under regulations governing the armed forces to apprehend persons subject to this chapter or to trial thereunder may do so upon reasonable belief that an offense has been committed and that the person apprehended committed it.

\* \* \* \* \*

"§ 809. Art. 9. *Imposition of restraint*

"(a) Arrest is the restraint of a person by an order, not imposed as a punishment for an offense, directing him to remain within certain specified limits. Confinement is the physical restraint of a person.

"(b) An enlisted member may be ordered into arrest or confinement by any commissioned officer by an order, oral or written, delivered in person or through other persons subject to this chapter. A commanding officer may authorize warrant officers, petty officers, or noncommissioned officers to order enlisted members of his command or subject to his authority into arrest or confinement.

"(c) A commissioned officer, a warrant officer, or a civilian subject to this chapter or to trial thereunder may be ordered into arrest or confinement only by a commanding officer to whose authority he is subject, by an order, oral or written, delivered in person or by another commissioned officer. The authority to order such persons into arrest or confinement may not be delegated.

"(d) No person may be ordered into arrest or confinement except for probable cause.

"(e) Nothing in this article limits the authority of persons authorized to apprehend offenders to secure the custody of an alleged offender until proper authority may be notified.

"§ 810. Art. 10. *Restraint of persons charged with offenses*

"Any person subject to this chapter charged with an offense under this chapter shall be ordered into arrest or confinement, as circumstances may require; but when charged only with an offense normally tried by a summary court-martial, he shall not ordinarily be placed in confinement. When any person subject to this chapter is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him."

4. "Larceny" is defined by Article 121 of the Military Code, 10 U.S.C. § 921, as follows:

"§ 921. Art. 121. *Larceny and wrongful appropriation*

"(a) Any person subject to this chapter who wrongfully takes, obtains, or withholds, by any means, from the possession of the owner or of any other person any money, personal property, or article of value of any kind—

"(1) with intent permanently to deprive or defraud another person of the use and benefit of property or to appropriate it to his own use or the use of

After first reading to Kidd Article 31 of the Military Code, 10 U.S.C. § 831,[5] Sergeant Thompson proceeded to question him about the missing clothing. He steadfastly denied any knowledge about it and continued to contend that some of his own property had been purloined. Thompson knew that Kidd owned an automobile and told him he wanted to search it. Because Kidd did not have a Base pass for the car, he kept it parked at the home of his friend, the other defendant, Harry Eugene Rogers, also twenty years old, who resided at 618 Herndon Avenue in Shreveport, Louisiana, across Red River from the Air Base. Thompson instructed Kidd to call Rogers to drive the car to the Air Base in order that it might be searched; but it developed that Rogers did not have a key, so this was not possible. Thompson then told Kidd he would go to his own quarters on the Base, eat supper, change clothes and come back for Kidd in his car, in which they would proceed together to the Herndon Avenue address.

Kidd was permitted to have supper in his squadron mess hall, but was kept under guard at all times. In about two hours, Thompson returned to Air Police Headquarters, picked up Kidd, and drove him to the Herndon Avenue address in Shreveport. There he had Kidd unlock his car doors and Thompson searched inside, finding nothing of significance.

He then told Kidd he wanted to search the trunk, which the latter unlocked and opened for inspection, but none of the missing clothing was found.

Thompson then observed, at the back of the trunk, a beach blanket wrapped about something and asked Kidd what it was. Kidd picked up the blanket, which was thrown over a small metal waste basket, unwrapped it, and upon looking in the basket, Thompson observed a sheet of photostat or photograph paper bearing the likeness of several United States $10 bills. He commented that this appeared to be "counterfeit" money and asked Kidd about it. The latter replied that he and Rogers, apparently as a prank, had photostated or photographed the bills at an advertising agency in Shreveport where Rogers worked part-time. This was done in about September or October of 1956.

Thompson thereupon took the photostat or photograph with him, told Kidd he was free from arrest on the "suspicion of larceny" matter, left Kidd at the scene, and drove to Shreveport Police Headquarters, where he reported what he had found. City Detectives then went to the Herndon Avenue address and arrested both Kidd and Rogers, the latter having arrived there after Thompson had left, not having been present at any of the discussions between Kidd and Thompson.

---

any person other than the owner, steals that property and is guilty of larceny; or

"(2) with intent temporarily to deprive or defraud another person of the use and benefit of property or to appropriate it to his own use or the use of any person other than the owner, is guilty of wrongful appropriation.

"(b) Any person found guilty of larceny or wrongful appropriation shall be punished as a court-martial may direct."

5. "§ 831. Art. 31. *Compulsory self-incrimination prohibited*

"(a) No person subject to this chapter may compel any person to incriminate himself or to answer any question the answer to which may tend to incriminate him.

"(b) No person subject to this chapter may interrogate, or request any statement from, an accused or a person

suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

"(c) No person subject to this chapter may compel any person to make a statement or produce evidence before any military tribunal if the statement or evidence is not material to the issue and may tend to degrade him.

"(d) No statement obtained from any person in violation of this article, or through the use of coercion, unlawful influence, or unlawful inducement may be received in evidence against him in a trial by court-martial."

Secret Service officers in New Orleans were notified, came to Shreveport shortly afterward, made an investigation, took charge of the evidence, and, on December 20, 1956, filed separate Commissioner's complaints against Kidd and Rogers, charging the latter with photographing the bills (18 U.S.C. § 474) and the former with possessing and concealing them (18 U.S.C. § 472). They immediately made bond and were released. On February 19, 1957, their attorney filed this motion to suppress, which was heard on March 16, 1957. Following later transcription of the testimony, the respective attorneys briefed the case and it is now under submission for decision.

As stated, the search and seizure admittedly were made without a warrant of any kind. The Government contends, however, that this was done, not only with Kidd's consent, but virtually upon his insistence. Since Kidd admits that he verbally consented, under military compulsion and in trying to clear himself of "suspicion of larceny", we must determine, upon consideration of all the circumstances, whether his consent actually was freely and intelligently given, without pressure; or whether it was, indeed, a coerced and limited consent which must be condemned as a violation of his rights under the Fourth Amendment to the Constitution.[6] Moreover, since Rogers was not present at any time when Thompson was conducting the search and seizure, and admittedly did not consent to it, we also must decide whether the evidence may be used against him.

In resolving these matters, since Rogers was a civilian, of course his rights must be judged by the rules applicable to ordinary citizens; and it is our view that Kidd is entitled to the same constitutional safeguards, notwithstanding he was an enlisted member of the Air Force when the search and seizure took place. Any doubt that this is so is resolved, we think, by virtue of its having been conducted on non-military territory, although we do not believe that really makes any difference. The cloak of constitutional protection against unreasonable searches and seizures is available to all citizens, at all times and places, civilian or military, within the jurisdiction of the United States.

It is fundamental, in the absence of a valid warrant, either of arrest [7] or for a search, that the burden of proving there was a truly voluntary and fully informed consent rests upon the Government.[8] Such proof must be made by clear and positive evidence, and it must be established that there was no coercion, actual or implied.[9] The Government must show a consent that is unequivocal and specific, freely and intelligently given.[10] If the consent actually given is made under compulsion, either "physical or moral", it may not serve to validate a search and seizure otherwise invalid for want of a proper warrant.[11] No general exploratory search and sei-

---

6. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

7. Cf. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399.

8. Nelson v. United States, 93 U.S.App. D.C. 14, 208 F.2d 505, 509; United States v. Novero, D.C., 58 F.Supp. 275; United States v. McCunn, D.C., 40 F.2d 295; United States v. Fowler, D.C., 17 F.R.D. 499, 502.

9. Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654; Judd v. United States, 89 U.S.App.D.C. 64, 190 F.2d 649; Nelson v. United States, supra.

10. Karwicki v. United States, 4 Cir., 55 F.2d 225; Novach v. United States, 6 Cir., 53 F.2d 639.

11. Ray v. United States, 5 Cir., 84 F.2d 654, 656.

zure of either persons, houses, or effects can ever be justified either with or without a warrant.[12]

After careful consideration of the evidence here, it is our conviction that the Government has not carried its burden of proof. Instead, the proof points the other way. Kidd was arrested on mere suspicion and held under restraint for several hours, both at the Air Base and on civilian territory. This young man was under military compulsion at all times, subject to the orders of his superiors; and undoubtedly was afraid of court-martial prosecution for insubordination[13] had he refused to consent to the search of his car. Having been falsely accused of larceny, he was under the further moral compulsion of attempting to clear himself of that charge, which never was formally filed for lack of evidence. His "consent" was coerced. It was strongly tainted with involuntariness and cannot be used to legalize a search and seizure otherwise clearly unlawful.[14]

There was ample time and opportunity for Sergeant Thompson to have applied to a magistrate for a search warrant, but this he did not do. Kidd's car was safe from flight, for he had its keys, was in custody and could not escape.[15]

It is our conclusion, therefore, that the evidence held by the Government must be suppressed as to Kidd. We also must hold that it cannot be used against Rogers, for two reasons: (1) being tainted with illegality as to one defendant, "it shall not be used at all";[16] and (2) Kidd and Rogers are jointly charged, and must be tried together; were the evidence to be admitted against Rogers only, it would be bound to influence the jury against Kidd, since it was found in his car. The Government thus would accomplish indirectly what it may not do directly. This we cannot permit.

For these reasons, the motion to suppress is granted as to both defendants.

12. United States v. Rembert, D.C., 284 F. 996, 1006, Hutcheson, J.; see also United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877. Cf. United States v. Rabinowitz, supra, and Harris v. United States, supra.

13. Article 91, Uniform Code of Military Justice, 10 U.S.C. § 891.

14. McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153; United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210; Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436; Rea v. United States, 350 U.S. 214, 76 S.Ct. 292, 100 L.Ed. 233; Robinson v. United States, 5 Cir., 164 F.2d 271; Clay v. United States, 5 Cir., 239 F.2d 196; United States v. Castle, D.C., 138 F.Supp. 436; United States v. Brougher, D.C., 19 F.R.D. 79; Whit-

ley v. United States, 99 U.S.App.D.C. 159, 237 F.2d 787; Ray v. United States, 5 Cir., 84 F.2d 654; Brock v. United States, 5 Cir., 223 F.2d 681; Shurman v. United States, 5 Cir., 219 F.2d 282; Karwicki v. United States, 4 Cir., 55 F.2d 225.

15. Clay v. United States, 5 Cir., 239 F.2d 196; Rent v. United States, 5 Cir., 209 F.2d 893; Cf. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Husty v. United States, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629.

16. Silverthorne Lumber Company v. United States, 251 U.S. 385, 40 S.Ct. 182, 183, 64 L.Ed. 319; Nelson v. United States, 93 U.S.App.D.C. 14, 208 F.2d 505; Kraemer v. State, Fla., 60 So.2d 615.