**ROBINSON v. UNITED STATES.**

No. 11877.

Circuit Court of Appeals, Fifth Circuit.

Nov. 14, 1947.

272

Riley Cunningham, of Booneville, Miss., for appellant.

John D. Hill, U. S. Atty., of Birmingham, Ala., for appellee.

Before McCORD, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

Libel of information was filed by the Government against the automobile, it being charged in the libel that the automobile was used on July 18, 1946, by persons unknown, in the removal, deposit, and concealment of four kegs (later corrected to read, three) which were materials proper and intended then and there to be used for the production of distilled spirits whereon a tax is imposed by the United States, which tax had not been paid and which said kegs were removed, deposited, and concealed in said automobile with intent to defraud the United States of the tax due on the distilled spirits produced and intended to be produced in said kegs; and that, under § 3321 of the Internal Revenue Code, 26 U. S.C.A. Int.Rev.Code, § 3321, the automobile was forfeitable to the United States. The prayer was that the automobile be condemned as forfeited to the United States and for a decree of disposal. Delton Robinson appeared as claimant of the automo-

bile, filing an answer in which he denied the material allegations of the libel. The case was tried to the court without a jury and resulted in a verdict in favor of the Government, ordering the car condemned.

An abridged statement of the facts as brought out by the evidence will suffice. On July 28, 1946, six revenue agents having information of the presence of a still in Colbert County, Alabama, drove to the neighborhood of the suspected still to investigate and if possible destroy it. At some distance from where the still later turned out to be, the party divided. Four of the men went on foot into the woods, and the other two drove the car farther on until they came to a house before which the Ford car, the subject of this libel, was parked. The two officers questioned three persons at the house as to the ownership of the car and the whereabouts of the owner. One Dewanye· Williams said the car belonged to Johnny Champion. Johnny Champion himself said that he did not know whose car it was. The third person questioned, Mrs. Durham, said it belonged to Delton Robinson who, she said, was half-brother to Dewayne Williams. Robinson, according to Mrs. Durham, had shortly before driven up, parked the car, and walked off with a rifle in a northerly direction to which she pointed. The officer testifying to all this on the witness stand said: "This northerly direction that this lady pointed out was where I could see smoke over there, and had heard a shot or two fired a short time before that. That was the place I had received information a few days before that there was a large distillery located. That's the reason that I looked into it." He also said, "After Johnny Champion had said he didn't know anything about the car nor whose· car it was, I took the keys and looked in the back of the car and found these kegs there. I called Johnny to come out there and showed him the kegs. He said 'I don't know anything about the kegs nor the car either.' That's why I looked into it." Having found in the trunk three 10-gallon charred kegs, empty, but smelling strong of whiskey, and several wooden bungs for use in the kegs, the agents seized the car. Soon afterwards the search party of four rejoined the two.

The testimony relative to the activities of the four prior to rejoining the two shows that as they proceeded on foot into the woods they saw three men approaching them. When the men drew near, they apparently saw the agents, and, firing two shots, they turned and ran back along the trail over which they had come. The four agents followed in hot pursuit and soon came upon a still in operation. No one was present at the site when they arrived. They destroyed the still and poured out the mash. Then they proceeded farther and found and destroyed a second still. Returning to an automobile turn-around not far from the site of one of the stills, they there found and from there followed some tire tracks to the Champion house before which the libelled Ford was parked. The tires on the Ford were gripper type, heavy duty tires; the tracks they had followed were made by gripper type, heavy duty tires with the same kind of tread as the tread on the Ford tires. Tires of this type, the Government witness testified, were in common use in the locality. After some investigation about the house which disclosed the presence of two drums of commercial blackstrap molasses, similar to drums found near the first still they had destroyed, and 57 gallons of non-taxpaid distilled spirits, the seized car was driven away by one of the revenue agents.

The sole question before us is whether or not this was an unreasonable search and seizure in contravention of claimant's rights under Amendment Article 4 of the Constitution of the United States. We are constrained to hold that it was unreasonable.

▉▉▉▉ The point must be kept in mind that this car was seized as an instrument used "in the removal, deposit and concealment" of non-taxpaid whiskey. In the first place, it is well settled that an automobile, because it moves easily and rapidly from place to place, may be searched and seized without a warrant where there is reasonable and proper cause to believe it is being used as a vehicle in illicit traffic. But to constitute reasonable and proper cause there must be more than mere suspicion. The fact of a car's being parked, even in the neighborhood of a moonshiner's still, may be as consistent with innocence as with guilt.

The only piece of evidence tending to arouse suspicion of this car, the tire tracks near the still, was unknown to the agents when they unlocked and searched the trunk and seized the car. Even if it could be said that that subsequently-acquired knowledge would justify the prior search, is the presence in the trunk of three empty kegs conclusive of guilt so as to justify the seizure? We think not. There might conceivably be a dozen innocent explanations of when, how, and why those empty kegs got into the car. "Circumstances equally consistent with several hypotheses prove neither; and the party having the burden must fail." Mutual Life Ins. Co. of New York v. Hess, 5 Cir., 161 F.2d 1, 4. The presence of the kegs affords no conclusive evidence that the car was used or was intended to be used in the removal, deposit, and concealment of non-taxpaid whiskey.

Cases like this involve great danger. The zeal of police officers to enforce the laws and do their duty may lead them to adopt what seems to them the most efficient method of enforcement, and sometimes, momentarily losing sight of constitutional rights, they proceed as though the end would justify the means. Cf. United States v. 1013 Crates of Empty Old Smuggler Whiskey Bottles, 2 Cir., 52 F.2d 49. "Stern enforcement of the criminal law is the hallmark of a healthy and self-confident society. But in our democracy such enforcement presupposes a moral atmosphere and a reliance upon intelligence whereby the effective administration of justice can be achieved with due regard for those civilized standards * * * which are formulated in our Bill of Rights." Frankfurter, J., dissenting, Davis v. United States, 328 U.S. 582, 66 S.Ct. 1256, 1272, 90 L.Ed. 1453. "Such constitutional limitations arise from grievances, real or fancied, which their makers have suffered, and should go pari passu with the supposed evil. They withstand the winds of logic by the depth and toughness of their roots in the past. Nor should we forget that what seems fair enough against a squalid huckster of bad liquor may take on a very different face, if used by a Government determined to suppress political opposition under the guise of sedition." Learned Hand, J., United

States v. Kirschenblatt, 2 Cir., 16 F.2d 202, 203, 51 A.L.R. 416.

The judgment appealed from is reversed, and the cause is remanded with directions to dismiss the libel.

Reversed and remanded with directions.