**UNITED STATES of America**

**v.**

**Jose Jesus Orosco PEREZ and David Elbert Mackey.**

**Crim. No. 72–C–31.**

United States District Court,
S. D. Texas,
Corpus Christi Division.

July 24, 1972.

Ellis C. McCullough, Asst. U. S. Atty., Houston, Tex., for plaintiff.

Edward A. Mallett and William W. Kilgarlin, Houston, Tex., for defendant Mackey.

Noe Garza, Corpus Christi, Tex., for defendant Perez.

## MEMORANDUM AND ORDER

OWEN D. COX, District Judge.

The Defendant David Elbert Mackey has filed herein his motion to suppress certain evidence, to wit, a considerable amount of marihuana, obtained as the result of his arrest and the search of the automobile he was driving, which allegedly were unlawful. An oral hearing on the motion was held on July 11, 1972. The facts, as found by this Court from evidence adduced on the hearing, are hereafter set forth in considerable detail.

On the 7th of March, 1972, at about 4:30 o'clock in the afternoon, Jose Jesus Orosco Perez, Co-Defendant herein, and referred to hereafter as "Orosco," entered into the United States from Mexico by crossing the Rio Grande River at the Falcon Reservoir Dam port of entry. On the Texas side of the border, a Customs official named Ramirez stopped Orosco, who declared he was a Mexican citizen returning to Nuevo Laredo, Mexico, by way of Laredo, Texas, and was driving a borrowed 1965 Oldsmobile with Texas license plates. All the property he declared was cookies and tomato juice. Ramirez, in making a routine check of the vehicle, detected the odor of marihuana. He also discovered that the car windows would not roll down, which created a suspicion of the presence of marihuana in the door panels. Orosco was arrested and given *Miranda* warnings as to his rights, and, contemporaneously, the car was seized. Further search revealed packets of marihuana concealed in the door panels and under the rear windows. However, none of the contraband was removed from the vehicle at this time.

While at the checking station, Orosco was asked by a special Customs agent named Kuykendall if he would cooperate, and in response, Orosco said the car had been given to him in Nuevo Laredo, Mexico, by a casual acquaintance, and that he was paid $100.00 to take it to Corpus Christi. Orosco further explained that he was given a paper match folder with a Nuevo Laredo telephone number written on it, and he was to call that number for instructions when he got to Corpus Christi.

On the same day, at about 5:30 or 6:00 p.m., Kuykendall contacted a special agent in Corpus Christi about the smuggled marihuana, and then special Customs agent Ochoa and Orosco started for Corpus Christi in the 1965 Oldsmobile, and agent Kuykendall followed. This convoy went through Hebbronville, San Diego and Alice, Texas, which are county-seat towns, but this is of no consequence. When they reached the City of Alice, Texas, Orosco called the telephone number on the match folder and was instructed to go to some motel in Corpus Christi, but without designating any specific one. This was the first information the government had concerning delivery of the contraband. But, it had no information as to where or when or how the delivery was to take place nor who else might be involved.

Subsequently, agent Hale of Corpus Christi, already alerted, who had made arrangements for two connecting rooms at the La Siesta Motel in Leopard Street in Corpus Christi, Texas, and several other agents joined Orosco, Kuykendall and Ochoa there. The 1965 Oldsmobile was parked in the motel parking area and Orosco kept the car keys. Orosco was then registered in one room and the agents in the other. From his motel room, Orosco made two telephone calls to the Nuevo Laredo number. Orosco advised whomever he talked to the name and address of the motel. The agents heard only his side of the conversations.

At about five o'clock on the following morning, March 8th, Defendant Mackey was seen arriving at the motel in a 1969 Pontiac, along with Robert Salazar, his wife and infant child. None of these individuals were then known to the agents

and their names were obtained later. Mackey went to Orosco's room and knocked on the door. The agents who were with Orosco went to their room, and closed the connecting door. After meeting with Orosco, Mackey went to the 1965 Oldsmobile, got in it alone and drove off. It is clear to the Court that Mackey could not have come to the La Siesta to see Orosco without the information relayed by Orosco to the Nuevo Laredo telephone number.

Mackey was followed by Salazar in the Pontiac. These cars proceeded westerly on Leopard Street, with agent Hale following in his car and Kuykendall in another. There were other agents along also. After traveling several miles, Mackey turned right off Leopard Street and speeded up. When this occurred, one of the agents turned on his sirens, caught up with the Oldsmobile, halted it, and then arrested Mackey. The Pontiac was also stopped. After Mackey's arrest, he was given *Miranda* warnings as to his rights. The agents checked the door panels, and the marihuana which had been left by them in the Oldsmobile was still there. Mackey would make no statement to any of the Customs agents, other than to say he wanted to talk to his lawyer. He was taken to jail and, that same day, before a magistrate, and was released on a $5,000.00 personal recognizance bond. It is now the province of the Court to determine if, under the applicable decisions of the Federal Courts, Mackey's arrest and the attendant search of the car and seizure of the contraband were unlawful.

The Defendant Mackey here has cited United States of America v. Scheffer et al., 463 F.2d 567 (5th Cir. 1972). In that case, the Fifth Circuit Court reversed the convictions of two of the defendants on the ground that a warrantless search of defendant Scheffer's house, in which defendant Collins was a guest, was in violation of their Fourth Amendment rights. The Federal Customs officers had "actually planned the cocaine transfer and could have controlled the time" at which the transfer of the contraband took place. This was a situation manufactured by the Customs agents, extending over several days and rather disconnected, and the recipients of the contraband were known well in advance.

However, in the instant case, the circumstances surrounding the arrest of Defendant Mackey were considerably different. The Customs agents did not plan the transfer of the contraband and did not know who was to get the marihuana. They only followed instructions which Orosco received by telephone from his confederates and did not have nearly the control over the time and place of the transfer of the contraband as did the agents in *Scheffer*. It is doubtful that the Customs officers here had enough advance information with which to secure a valid search warrant until after Mackey left Orosco's motel room and got in the 1965 Oldsmobile. In any event, after the place of the transfer became certain and the person to whom the transfer was to be made became known, there was not adequate time to get a search warrant. The agents could not have effectively arrested Mackey until he started off in the car. The agents' case against him would have been sadly lacking. Otherwise, since Orosco didn't know him, his answer could easily have been, "I just got the wrong room." In this case, the officers did nothing more than to pick the La Siesta Motel for the base in Corpus Christi. The Defendants fixed the schedule of events, not the Customs officials. The legal control over the vehicle by the government because of the original seizure of the vehicle had nothing to do with the method employed. The entire occurrence had been planned by the smugglers, and the Customs agents were along.

Another material distinction between the *Scheffer* case, supra, and the instant case is that *Scheffer* involved the search of a house, whereas the instant case involves the search of an automobile. In Carroll v. United States, 267 U. S. 132, 45 S.Ct. 280, 69 L.Ed. 543

(1925), it was held that an automobile may be searched and seized without a warrant where there is reasonable and proper cause to believe that it is being used as a vehicle in illicit traffic. In Chambers v. Maroney, 399 U.S. 42, 50, 90 S.Ct. 1975, 1980, 26 L.Ed.2d 419 (1970), the Court recognized the "mobility of a car may make the search of a car without a warrant reasonable," even if it would be otherwise regarding a fixed property; and held that for constitutional purposes, there was no difference in seizing and holding a car before presenting the probable-cause issue to a magistrate or carrying out an immediate search without a warrant; given probable cause to search, either course is reasonable under the Fourth Amendment. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L. Ed.2d 564 (1971), cited by the Defendants, is not in point here. There, the car was parked in the petitioner's driveway and was subsequently towed to the police station, where it was subjected to a warrantless search, whereas here the vehicle involved was not parked but had been mobile prior to the search. Moreover, unlike the situation in *Coolidge*, the car here was an active part of the crime. The situation here, this Court believes, falls under the rule announced in Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730, where it was held that the police did not violate the Fourth Amendment by making a search, closely related to the reason petitioner was arrested, of a car which they validly held for use as evidence. The Court said, "It is no answer to say that the police could have obtained a search warrant, for '[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable,'" citing the *Rabinowitz* case, 339 U.S. 56, 66, 70 S.Ct. 430, 791, 94 L.Ed. 653. Nor was the search here too remote in time or place of the arrest, as in Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). See also Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.

Ed.2d 1067 (1968), and Robinson v. United States, 164 F.2d 271 (5 Cir., 1947).

Under the authority of the above-cited cases, it is the conclusion of this Court that the arrest of Mackey and the search of the 1965 Oldsmobile incident thereto did not violate the Defendant Mackey's Fourth Amendment rights, but the arrest and search were valid and lawful; and that the motion to suppress evidence filed herein by Defendant Mackey should be denied; it is therefore

Ordered that the motion to suppress evidence allegedly obtained in connection with the arrest of Defendant Mackey, and the search of the 1965 Oldsmobile automobile, be, and it is hereby, denied. This order is to be entered nunc pro tunc, as of the 12th day of July, 1972, at which time this Court orally denied the Defendant Mackey's said motion. The Clerk shall furnish a copy of this memorandum to all counsel for each party.